## Port Vue Borough v. Pittsburgh, &c., Railroad Company.

*Oliver K. Eaton* and *Harry M. Jones,* for plaintiff.

*George Wick* (of *Reed, Smith, Shaw & McClay),* for defendant.

MARSHALL, J., June 2, 1928.—Plaintiff filed this bill for a mandatory injunction to compel the removal of railroad tracks from a public road, and for general relief. Defendant answered, averring that, with the consent of plaintiff, it had furnished a new and better road in place of the one occupied. A replication was filed, denying plaintiff had consented to the relocation and that the new road was better than the old.

The issues were: (1) The width of the former road; (2) whether the new road was constructed pursuant to any agreement between the parties; and (3) whether the road was reconstructed on the most favorable location and in as perfect a manner as the original road.

## Findings of fact.

1. Plaintiff is a municipal corporation under the laws of the State of Pennsylvania, having been incorporated in 1892, and is situate along the westerly side of the Youghiogheny River, in Allegheny County.

2. Defendant is a corporation under the laws of the State of Pennsylvania, and for more than thirty years past has owned a line of railroad extending along the Youghiogheny River through the plaintiff borough.

3. In 1901, said railroad consisted of three tracks, located between the west bank of the river and a hill, or line of hills, which extends parallel to, and a short distance west of, the river. At the same period, an open, traveled, public road, known as the River Road, was located between the railroad and the river bank, immediately adjacent to, and parallel with, the railroad. This River Road extended from the boundary-line between Port Vue Borough and the City of McKeesport, southwardly through the borough, for a distance of more than 3000 feet, in the course of which it crossed a small stream, known as Still House Run.

4. Proceedings to lay out a public road in the portion of Elizabeth Township, which is now Port Vue Borough, were instituted in the Court of Quarter Sessions of Allegheny County, Pennsylvania, at No. 9, October Sessions, 1850, in which proceedings a report of viewers was subsequently filed and confirmed, whereby a road was laid out on substantially the same location occupied by said River Road in 1901. Thereafter, in due course, reviewers were appointed and an order entered that proceedings to open the road should be stayed until further order. The reviewers reported there was no occasion for such road, and no further order has been entered. Said court did not at any time fix the width of said road.

5. That portion of said River Road, as it existed in 1901, which extended southwardly from Still House Run, had been laid out by proceedings in said Quarter Sessions Court at No. 11, March Sessions, 1857. In said proceedings, the court at time of confirmation *nisi* of the viewers report, ordered that the width of said road, when opened, should be 33 feet, and subsequently confirmed absolutely the report of the viewers and issued an order to open.

6. That portion of said River Road, as it existed in 1901, which extended northwardly from Still House Run to the dividing-line between Port Vue Borough and the City of McKeesport, had been in use as a public thoroughfare continuously for more than forty-five years prior to 1901, on substantially the same location shown on the viewers' report in the aforesaid proceedings at No. 9, October Sessions, 1850. Such portion of road, as it existed in 1901, was of a width of 25 feet.

7. Prior to its relocation as hereinafter described, the River Road was an unimproved clay road, located on solid ground. It contained a few grades for short distances, but its level spaces totaled more than one-half of its

entire length. Its traveled portion did not occupy its entire width at all points, but it would have required only a small amount of grading and filling to render it fit for public travel over its whole breadth. Lying on solid ground on the top of the river bank, it was in no danger of destruction from the action of the river.

8. In 1901 and 1902, defendant company, in order to care for an increased volume of railway traffic, widened its railroad through plaintiff borough by laying down four additional tracks between the former three tracks and the river bank. In so doing, it occupied with said new tracks all of said River Road from a point near the dividing-line between Port Vue Borough and the City of McKeesport to a point distant 3500 feet southwardly therefrom. Because of such widening, defendant found it necessary to change the site of said River Road between the points aforesaid. Accordingly, during the progress of the widening operation, it moved said road nearer to the river and reconstructed the same, at its own expense, parallel with and at the same level as the railroad.

9. Prior to such relocation, the River Road was somewhat lower in elevation than the railroad. In making the aforesaid changes, defendant filled in the space between the railroad and the river with ashes, cinders, brickbats and slag until it was raised to the level of the railroad. It extended such fill at many points to the top of the river bank, with the slope of the fill extending to the water's edge at an angle of from 30 to 35 degrees. For the distance of 1400 feet the fill was 41 feet in depth. No retaining wall was built, or other provision made, to support the fill or to protect it against the action of the river in time of flood or high water, except that large pieces of coarse slag were laid at the bottom of the slope and for a short distance up its face. These were not bonded in any manner and were inadequate protection against the action of the river.

10. The total level space on top of the fill, that is, between the railroad and the brink of the slope, was 16½ feet in width, and on this space the River Road was relocated by defendant. No provision was made by defendant for the future widening of the new road to its original width, and such additional width cannot be obtained for road purposes, except at great expense, by building a retaining wall and extending the present fill to that wall.

11. The distance between the river and the railroad, as widened, is not less than 33 feet at any point, all of which intervening space is owned by the defendant, and, if properly filled and supported, is ample to accommodate a 33-foot roadway to the south of Still House Run and a 25-foot roadway to the north of said run.

12. Commencing within the first year after the relocation aforesaid, the action of the Youghiogheny River, in time of spring freshets, floods and high water, has gutted out and washed away considerable portions of the fill at various points along the road, thereby reducing the width of the roadway on top of the fill, so that the same has been narrowed at various points to 8, 10, 12 and 14 feet, respectively. Because of such narrowing, said road is now unsafe for public travel.

13. Immediately before defendant widened its railroad and reconstructed the public road, the council of plaintiff borough and a representative of defendant consulted regarding the proposed changes. Council was advised of the changes which defendant proposed to make, and, while it did not agree to them, it took no steps to interfere with the work and requested that the road be kept open during the course of the work. At a meeting of the council on April 22, 1901, a motion to instruct the borough solicitor to file a

bill for an injunction against the appropriation of the road by defendant was voted upon and lost.

14. In 1915, the Allegheny By-Products Coke Works Company dug a trench in the road some two or three feet from the then top of the slope, laid a pipeline therein and refilled the trench. About 1920 a second pipe-line was laid in the same trench. These disturbances of the fill made it the easier for the river to wash away portions of the fill, but were not the prime cause of the erosion, the action of the river upon the fill being a continuing process, which had commenced in 1902, when the fill was completed.

15. Since the completion of the fill and relocation of the road, defendant has not repaired the road or the fill and has done nothing to protect them against the action of the river. It contends it was not obligated to construct the new road to the legal width of the former road, but that it discharged its duty by furnishing a roadway of the same width as the traveled portion of the original road.

## Discussion.

Defendant's authority for appropriating and occupying with its tracks a portion of the River Road is to be found in section 13 of the Act of Feb. 19, 1849, P. L. 85, as follows: "If any such railroad company shall find it necessary to change the site of any portion of any turnpike or public road, they shall cause the same to be reconstructed forthwith, at their own proper expense, on the most favorable location and in as perfect a manner as the original road."

The right to determine whether a necessity for a change of site exists is lodged in the railroad company in the first instance, subject to review by the courts in event of abuse of such power: Pennsylvania R. R. Co.'s Appeal, 128 Pa. 509. As plaintiff's proof did not challenge the proper exercise of this power, it follows that plaintiff's prayer that defendant be required to remove its tracks from the original site of the road must be refused.

The necessity for a change of location having been determined, and the defendant having undertaken to reconstruct the road occupied by it, the important question is whether the reconstruction was in compliance with the terms imposed by the statute.

One of those terms is that the road shall be constructed "on the most favorable location." Whether the location selected is the most favorable is a public question, and due regard must be had for the interest of the public: Foley v. Beach Creek Ext. R. R. Co., 283 Pa. 588, 598. With this in mind, we have had no difficulty in finding that the new location selected was the most favorable. The former location was on top of the river bank, but so is the new. To locate the road on the opposite side of the railroad would necessitate two crossings of the railroad, which ordinarily are not in the public interest and are to be avoided when possible. Finally, the draft showing the old and new locations discloses that between the limits of change the new location is shorter than the old. Considered, therefore, from the aspect of site alone, and in the absence of any proof as to the locus of a better location, the new location is the most favorable.

Was the road reconstructed in as perfect a manner as the original road?

It is no longer open to question that when proceeding under authority of the Act of 1849, it is the duty of a railroad to furnish a reconstructed road of the same width as the original. As explained by Mr. Chief Justice Mitchell in Com. v. D., L. & W. R. R. Co., 215 Pa. 149, 153: "What the railroad company does under this authority is not to give the Commonwealth a new road

with a new title and new attributes, but the old road reconstructed. The site is necessarily changed, but in all other respects it is to be 'the same,' to wit, expressly upon the most favorable location and in as perfect a manner as the original road, and by necessary implication of the same other qualities, including width, actual and potential."

In Sugar Creek Township *v.* Erie Ry. Co., 242 Pa. 573, the traveled portion of the former road was from 15 feet to 22 feet in width, although the authorized width was 33 feet. The action was by the township to recover the cost of reconstruction. In awarding a new trial and stating the legal principles which should govern such new trial, the Supreme Court said (pages 577 and 578): "Any expense, therefore, necessarily incurred in widening the road to its original width of 33 feet, outside of the right of way of the railroad, would be recoverable in this action. The evidence should have been limited to that alone. As is pointed out in the decision in Com. *v.* D., L. & W. R. R. Co., 215 Pa. 149, the township had the right to require the railroad to reconstruct a new road 33 feet wide. . . . If the defendant company stands upon its strict legal rights as to the expenditures already made by the township, the latter can, and naturally will, insist upon its right to compel the construction of a new road of the full legal width."

The defendant company recognizes its obligation to furnish a new location of the same width as the old, but contends it is not required to furnish a graded roadway of greater width than the traveled portion of the original road. This contention does not give full effect to the statutory requirement as to perfection of manner of reconstruction. Even though defendant has set apart a new location of the full legal width, yet if but one-half of that location accommodates a level roadway, while the remainder consists of a 30-degree slope extending to the river's edge, with inadequate support and subject constantly to ravage and erosion by action of the river, it must be obvious that the reconstruction is not in accordance with the statute.

The intention of the legislature was to prevent any new or additional burden from being imposed upon the public by reason of the reconstruction. If, in order to make full use of the reconstructed road, moneys must be expended which a like use of the original road would not have necessitated, the burden of such expenditure must fall on the railroad and not on the public: Pennsylvania R. R. Co. *v.* Irwin Borough, 85 Pa. 336; Newlin Township *v.* Davis, 77 Pa. 317. Since but little expense would have been required to open and grade the original road to its full width, while a very large sum will be required to accomplish the same result on the new location, we conclude that defendant has not as yet discharged its obligation.

It is further contended by defendant that the road was reconstructed in accordance with an agreement between the borough and the railroad company, and that, having since accepted and adopted the new road, the borough cannot now complain, especially as twenty-two years have elapsed since the road was reconstructed.

The statutory duty to reconstruct is a continuing obligation, which is in no wise lessened by lapse of time: Com. *v.* Railway Co., 14 Pa. Superior Ct. 336. Nor can the public right to faithful and substantial performance of that obligation be bargained away by the officials of plaintiff borough: Snow *v.* Deerfield Township, 78 Pa. 181. At most, defendant's evidence as to its dealings with the borough establishes, not an agreement between the parties, but mere knowledge by the borough council of the intent to change, with subsequent acquiescence. This is wholly insufficient to bar the plaintiff or absolve the defendant.

The court proceedings of 1887 establish the legal width of the portion of road south of Still House Run as 33 feet. There are no such proceedings fixing the width of the part extending northwardly from that run. We were, therefore, obliged to ascertain the width from such verbal testimony as was offered. It was shown that defendant had made two surveys of the original road in 1897, in both of which surveys measurements had been taken of what defendant claimed was the width of the road. The testimony of defendant's engineer, Thornton, discloses that what the surveying parties did was to measure the level section on which the public did or could travel, but that when a "break" or "variation" was found by which the surface of the ground rose or fell three or four inches from the level, the space which lay beyond such break was not included in the width of the road. This was a most arbitrary method of ascertaining the width of a road, and that common sense was not exercised, is shown by the results, for the width of the road as thus determined was asserted by defendant's engineers to be as little as 8, 10, 11 and 12 feet at various points. The majority of these narrow widths appear to have been measured on the southerly end of the road, where the legal width, as shown by the court records, in fact was 33 feet.

The width of road, determined by such method of measurement, could not be found as a fact, in the face of credible and uncontradicted testimony that the road had been open and in general public use for more than forty-five years and that two teams could and did pass on it "with plenty of room," except for one or two narrow portions of about 75 feet in length.

The great weight of the evidence was with the plaintiff, to the effect that the road had been the usual country road, with the witnesses' estimates of its width, varying from 25 to 35 feet. From an analysis and study of this testimony, we have concluded that the northerly end of the road, as it existed in 1901, was 25 feet in width, and we have so found as a fact.

### Conclusions of law.

1. Defendant's occupancy of the River Road, as it existed in 1901, was lawful, and it cannot now be compelled to remove its tracks from said road.

2. Having found it necessary to change the site of said River Road, it became the duty of defendant, forthwith and at its own expense, to reconstruct the same on the most favorable location and in as perfect a manner as the original road, which included the obligation to reconstruct the same to its original width

3. The reconstruction of the road, as made by defendant, to a width of but 16½ feet and without adequate support for the fill on which [it was] laid, was a reconstruction on the most favorable location, but was not in as perfect a manner as the original road.

4. The aforesaid obligation to reconstruct said road is a continuing obligation and is presently enforceable, notwithstanding the lapse of time since the site of the road was changed.

5. Plaintiff did not forfeit its right to relief by its knowledge of the proposed changes and its failure to object to same before or at the time they were made.

6. Defendant should be required to complete the reconstruction of said road by widening and opening the present roadway to the original width of the road and by constructing such wall or other support as will afford permanent protection to the roadway against impairment by the action of the river.

*Decree nisi.*

And now, to wit, June 2, 1928, upon consideration of the foregoing case, it is ordered, adjudged and decreed *nisi* as follows:

1. That defendant, within a period of eight months from the date of this decree, complete the reconstruction of the River Road through the Borough of Port Vue, by widening and opening to a width of 33 feet the present roadway constructed by defendant south of Still House Run, and by widening and opening to a width of 25 feet the present roadway constructed by defendant north of Still House Run, and by constructing such wall or other support as will afford permanent protection to such reconstructed roadway against impairment by the action of the Youghiogheny River.

2. That defendant pay the costs of this proceeding.