Luzerne Township, Appellant, *v.* Monongahela Railways Co.

38

Argued January 19, 1931. Before FRAZER, C. J., WALLING, SIMPSON, SADLER, SCHAFFER and MAXEY, JJ.

*Linn V. Phillips,* for appellant.—It is the statutory duty of appellee to reconstruct the new road to the full width of thirty-three feet: Sugar Creek Twp. v. Ry., 242 Pa. 573; Com. v. R. R., 215 Pa. 150; Furniss v. Furniss, 29 Pa. 15; Snow v. Twp., 78 Pa. 181.

It is the statutory duty of appellee to provide proper retaining walls to prevent slides, erosions or nature's deterioration of the surface of the reconstructed road: Port Vue Boro. v. Ry., 11 Pa. D. & C. 385.

Supervisors have no authority to bargain away the rights of the Commonwealth and its people to roads:

Com. v. R. R., 215 Pa. 149; Com. v. Ry., 14 Pa. Superior Ct. 336; Snow v. Twp., 78 Pa. 181; Port Vue Boro. v. R. R., 11 Pa. D. & C. 385.

*Dean D. Sturgis*, for appellee.—That appellee was not required to construct that part of the road to be available for travel to the potential width of the original road is apparent both from a reading of the act itself, as well as the decided cases: Com. v. R. R., 215 Pa. 149.

OPINION BY MR. JUSTICE MAXEY, February 2, 1931:

Plaintiff filed a bill for a mandatory injunction to compel the defendant to remove its railway tracks from the public highway in Luzerne Township, Fayette County, Pennsylvania, for a distance of 8,480 feet and to reconstruct the said township road between named points in the same manner as existed prior to the location by the defendant of its tracks thereon, or to reconstruct the highway between these points on the most favorable location, of a width of 33 feet, and in as perfect a manner as the original road, and also that the defendant be compelled to construct retaining walls to support the roadway to its full width and to afford protection from slides, etc.

The issue between the parties is this: Was the new road, built by the defendant company in 1902 as a substitute for the old road, "reconstructed in as perfect a manner as the old road," as the Act of 1849, P. L. 79, required?

Appellant concedes that the defendant complied with that part of its statutory duty which requires the construction of the old road "on the most favorable location." No question would have arisen at this late date in respect to the defendant's fulfillment of the other part of its statutory duty if the advent of motor vehicles had not made the new road constructed twenty-nine years ago inadequate to present-day requirements.

The road under consideration recently became an important link in the system of state highways. The road constructed in 1902 satisfied the plaintiff township at that time and for a long time thereafter, as is evidenced, (1) by the declaration of the township supervisors at that time to the effect that "everything is satisfactory; we take the road"; and (2) by the want of any official complaint or action by the plaintiff against the defendant on account of that new road, from October 20, 1902, when the road was completed, until the bill was filed early in 1929.

The following pertinent facts were established:

(1) In 1803, the road, which we will refer to as the "old road," was laid out by viewers duly appointed; the court confirmed the viewers' report for a road "to be built 33 feet wide."

(2) The road was not actually built that wide. It was, in fact, a single-track dirt road, varying in width from 6 to 14 feet. The chancellor accurately sums up the evidence as to the old road, in his sixth finding of fact, as follows:

"6th. The said road, when appropriated by defendant, was an ordinary country road, with stone and dirt surface in the main, having a single-track roadbed, with space for vehicles to pass at different points along the road. It was in use throughout all seasons of the year, subject to some slides of dirt and rock, some of which were required to be moved to keep it passable, and others were such that traffic could and did pass over them, but none of them seriously delayed traffic; it was nearly level throughout, lying along and in close proximity to the river edge, and in times of high water portions of it were covered with water; it could have been widened at a reasonable expense."

(3) The new road varies in width from 8 to 14 feet; it would require a large expenditure of money to widen it and to make it adequate to present-day traffic requirements. Guard rails are necessary to protect persons

using the highway, the old road had no such guard rails. The plaintiff has constructed guard rails on the new road. All of these facts were found by the chancellor and supported by sufficient proof.

It is clear that the practical question presented in this case is: Who is going to pay for the widening, improving and protecting the 8,480 feet of highway now required at the locus of this controversy? Appellant contends that it is the statutory duty of appellee to reconstruct the new road to the width of 33 feet. The old road was not so built, but was so *to be* built." The new road of 1902 was practically a duplication of the old road as it was in fact, but not as it was on paper. At the present time a road 33 feet wide has become necessary. Shall the defendant be compelled to build it? The phrase "in as perfect a manner as the original road," as used in section 13 of the Act of 1849, P. L. 79, we interpret not as referring to the method of building the old road, but as requiring that the new road be the same sort or kind of road as the old road. Webster's New International Dictionary gives as the first definitions of "manner" the following—"species, kind, sort." As was said by Chief Justice MITCHELL, in Commonwealth v. D., L. & W. R. R. Co., 215 Pa. 149, at 153: "What the railroad company does under this authority [Act of 1849] is not to give the Commonwealth a new road with a new title and new attributes, but the old road reconstructed. The site is necessarily changed, but in all other respects it is to be 'the same,' to wit: expressly upon the most favorable location and in as perfect a manner as the original road, and, by necessary implication, of the same other qualities, including width, actual and potential." The Act of 1849 does not require that the reconstructed road shall be an exact replica of the old road in respect to its grade or other physical aspects. Such a requirement might be utterly impracticable because of the difference in the terrain on which the new road was to be built. It does, however, require

that the new road, in location and width, shall be, as far as it is physically practicable, an adequate substitute for the old road appropriated by the railroad company.

The court below found from the evidence that the new road constructed by the defendant was of the same width actually as the old road, and the same width potentially as the old road. The court aptly said in its opinion dismissing plaintiff's exceptions: "The potential width of the old road was thirty-three feet, and the potential width of the new road as located along the hillside was thirty-three feet, and still is thirty-three feet, as the testimony discloses that the matter had been taken into consideration at the time of the relocation. There is no contention here that there is not sufficient ground along the hillside upon which to build or construct a road thirty-three feet wide; in fact, the testimony all discloses that there is more than that much ground along the way. The old road being thirty-three feet wide, the new road which was laid out to take its place still maintains that same width. It was actually opened, however, for a width of approximately fourteen to sixteen feet, which was wider than the old road. By the term 'open and construct,' as used, we mean the actual building of the roadway, not the construction of the potential width of the road...... We believe that the defendant company discharged its obligation when it reconstructed a new road to a potential width of thirty-three feet and actually opened the new road to a width of fourteen to sixteen feet and reconstructed the traveled way of the new road in as perfect a manner as the original road......At the time the old road was taken, it was an ordinary country road, probably not traveled extensively, and a new road was supplied which met the conditions as they existed at that time. It seems now that it would be an unjust decree, after all these years of upkeep and maintenance by the plaintiff township of the road, which would require the defendant company to reconstruct it to meet present-day

needs and demands, when in good faith it did relocate it on the most advantageous route and location and reconstructed it in as perfect a manner as the original road."

Apparently, the only substantial difference between the old road and the new road is that, on account of the topographical differences in the respective locations of these roads it would cost more to widen the new road than it would cost to widen the old road. This is one of the risks the public has to take when an old road is appropriated under the Act of 1849 and a new road is substituted therefor. It may be that in some cases when the actual road has to be widened to take care of additional traffic requirements this widening may be less expensive than the widening of the old road would have been. When it proves to be less expensive, the public is the gainer. When it is more expensive, the public loses. When the township and the railroad company traded roads in 1902, the contract of trade was made under and in reference to conditions then existing. The old, narrow road was able to meet all the traffic requirements put upon it from 1803 until 1902, and no one had reason to anticipate in the latter year that within less than a third of a century a road of the old width would prove totally inadequate. It would be inequitable to compel the railroad company to pay now for the widening of a road which both parties in 1902 believed would be adequate to the future demands put upon it. If the old road used for ninety-nine years had been actually 33 feet wide and the new road constructed in 1902 by the railroad company had been of the same width, and if in 1929 additional traffic requirements had made it necessary to widen this road to 50 feet, and if it could be proved that it would cost much more to widen the new road to 50 feet than it would have cost to widen the old road to 50 feet, the township would not, of course, be in any position to demand of the railroad company the additional cost of widening the

road. The township is, under the facts of the instant case, in no better position to make now a similar demand upon the railroad company, when the actual roadway has to be widened from 16 feet to 33 feet. The railroad company gave the township in 1902 a new road which was, as far as practicable, a duplicate in actual and potential width of the road it took from the township. However, on account of the present location of the new road, it will cost the township more to make the new road's actual width correspond to its legal width, than it would to have widened the old road in equal measure. But since appellant concedes that the new road was constructed "on the most favorable location," we do not see why the railroad company should be penalized now for something which results from a condition of nature, and the necessity for overcoming which could not in 1902 have been reasonably anticipated by either party. It is the demands of the public that made this unforeseen widening necessary, and the public should pay for it.

There is nothing in the decisions of the Supreme Court in the following two cases which conflicts with the decision of the court below in this case: Sugar Creek Township v. Erie R. R. Co., 242 Pa. 573; Commonwealth v. D., L. & W. R. R. Co., 215 Pa. 149.

In the first case, this court decided that when a township constructs a new road to take the place of a road appropriated by a railroad company under the Act of 1849, and the new road is partly within and partly without the right of way of the defendant company, it is entitled to recover only for the expense it has incurred in reconstructing the road outside of the right of way of the defendant company.

In the second case, this court sustained the action of the court below in enjoining a defendant company encroaching upon the legal width (33½ feet) of a reconstructed road, even though only part of that legal width was actually used as a road. In that case, this

court, speaking through Chief Justice MITCHELL, said: "The court below found that the legal width of the original road in 1803 was fixed at 33½ feet......In contemplation of law the present road is the road that was opened by legal proceedings in 1803." He said further: "The buildings [of the defendant company] were within the legal limits of the highway, the chute extending across it, though above the surface, was of course an obstruction, and the court found that the quarry was so operated as to be dangerous to public travel and a nuisance. The injunction was therefore properly issued." The question in that case was not, therefore, the question in the case before us.

Counsel for appellant presses upon our attention the very well considered case of Port Vue Boro. v. Pittsburgh Ry., 11 Pa. D. & C. 385. The facts of that case were stronger for the plaintiff than the facts in the present case. In that case, Judge MARSHALL said: "The great weight of the evidence was with the plaintiff, to the effect that the [old] road had been the usual country road, with the witnesses' estimates of its width varying from 25 to 35 feet. On an analysis and study of this testimony, we have concluded that the northerly end of the road, as existing in 1901, was 25 feet in width, and we have so found as a fact." The court's third conclusion of law, that "the reconstruction of the road as made by defendant to the width of but 16½ feet and without adequate support for the fill on which it was laid......was not in as perfect a manner as the original road," logically followed. The decree requiring the defendant to widen the new road to 33 feet south of a certain point and 25 feet north of that point was consistent with such finding of fact and conclusion of law. The differences between the facts of that case and this case are obvious.

Appellant's contention that the statutory duty to reconstruct a new road in as perfect a manner as the original road is a continual obligation until it is discharged, is well founded in law: Com. v. Ry. Co., 14 Pa. Supe-

rior Ct. 336. But the court below has found upon sufficient evidence that this obligation was in the instant case discharged.

Equally well founded in law is appellant's contention that the acceptance of the reconstructed road in 1902 by the township supervisors did not, per se, operate to discharge the defendant company from its obligations under the Act of 1849. However, this acceptance in 1902 of the reconstructed road, and the acquiescence for twenty-seven years of the township supervisors and other officials and parties in interest, in the acceptance, is persuasive evidence in support of the proposition that the reconstructed road in 1902 was the same "sort" or "manner" of road that had been used in the parallel near-by location for ninety-nine years previously.

The principle of fair dealing requires that when a road is appropriated by a railroad company under the Act of 1849, and a new road is reconstructed as a substitute for the old road, the persons whose duty it is to pass upon the adequacy of the new road should, if the road is inadequate, protest with reasonable promptness or forever after hold their peace.

The findings of a chancellor, based on evidence and affirmed by the court below, must be given the same weight as a verdict of a jury, and will not be disturbed on appeal: Kern v. Smith, 290 Pa. 566, 569.

The decree of the court below is affirmed, and the appeal is dismissed at the cost of the appellant.