## Ionian Bank, Ltd. *v.* Mamatos et al. (Union Trust Company, Appellant).

Argued October 29, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*T. W. Pomeroy, Jr.,* with him *William K. Given, Jr.,* for appellant.

*George F. Taylor,* with him *Alter, Wright & Barron, John S. Laughlin* and *Moorhead & Knox,* for appellees.

OPINION BY MR. CHIEF JUSTICE SCHAFFER, November 25, 1940:

In foreign attachment where the defendant dies, after entering a general appearance, but before judgment, does his death abate the action, is the question presented.

Plaintiff bank is located at Athens, Greece. It brought this foreign attachment proceeding under the Act of June 13, 1836, P. L. 568, 12 PS Sec. 2861 et seq., in the Court of Common Pleas of Allegheny County against defendant who was a resident of the Island of Icaria in Greece, and summoned the Mellon National Bank as garnishee. The attachment was levied upon money or choses in action of defendant in possession of, or due and owing by the Mellon National Bank to him. After service of the writ, a general appearance was entered for defendant and for the garnishee. Defend-

ant filed an affidavit of defense. The case was put at issue, but before trial defendant died. The Union Trust Company of Pittsburgh was appointed his ancillary administrator, entered an appearance de bene esse, suggested his death, and, for that reason, moved to quash the writ and to dissolve the attachment. The court below refused the motions and from its action comes this appeal.

That the death of defendant in an action of foreign attachment abates the attachment has been long held by us. In *Ludlow v. Bingham,* 4 Dallas 47 (1799) at page 59, in the argument of Mr. Ingersoll, it is stated: "A judgment in an attachment is not conclusive evidence of a debt out of the state, in which it is rendered; and the death of the defendant, after interlocutory judgment, destroys the attachment, because there is not any party in court; because executors or administrators are not liable to enter special bail; and because no foreign attachment can issue against executors or administrators." In *Farmers' and Mechanics' Bank v. Little,* 8 W. & S. 207, 219, (1844) Chief Justice GIBSON says: "It never has been doubted that the defendant's death before final judgment dissolves an attachment; and it was said by Mr. Lewis,* arguendo without contradiction, in *Ludlow v. Bingham* (4 Dall. 60), that the effect is not prevented by an interlocutory judgment, because there are no longer proper parties. Indeed Mr. Dallas expressed a doubt in a note appended to his report of the case, whether death is not a dissolution of the suit even after final judgment; which was not resolved till the point came up in *Fitch v. Ross* (4 Serg. & Rawle 557), when it was held that it was not, as the defendant's representatives may come in and disprove the debt. . . . But the primary intent being to procure an appearance, a foreign attachment is dissolved the instant

---

* The report indicates that it was said by Mr. Ingersoll but whether by the one or the other, the weight would be the same, as they were both bar leaders.

the defendant has appeared or lost his capacity to appear, because the law exacts not impossibilities; and this shows that the attaching creditor gains no property in the thing by laying the attachment. It is security for the defendant's appearance merely; and it is released as soon as the condition has been performed or become impossible." It was accordingly held that the dissolution of a corporation defendant in foreign attachment, in analogy to the death of an individual defendant, dissolved the attachment. In *Willing v. Bleeker,* 2 S. & R. 221, 224 (1816), it was said by Chief Justice TILGHMAN that a foreign attachment "would be dissolved by the death of the defendant before judgment." Mr. Justice YATES in his opinion in the same case announces a similar view. *Hays v. Lycoming Fire Ins. Co.,* 99 Pa. 621 (1882), which also involved the question of the effect of the dissolution of a corporate defendant, contains this statement of the law (p. 626) : "Judgment cannot be rendered against the dead. The civil death of a corporation before judgment in a foreign attachment against it, dissolves the attachment." *Reynolds v. Nesbitt,* 196 Pa. 636, 46 A. 841 (1900), reviews all of the cases and categorically lays down the rule, as stated in the syllabus, that the death of the defendant in a writ of foreign attachment before final judgment against him is obtained works a dissolution of the attachment. It is there said, speaking through Mr. Chief Justice GREEN, (p. 638) : "An examination of the authorities shows that this court has in repeated instances decided that the death of the defendant in a writ of foreign attachment, before final judgment against him was obtained, worked a dissolution of the attachment. . . . If the attachment transfers no property, if it confers only a special kind of lien liable to be defeated in a number of ways, and particularly by the death of the defendant before judgment, then there is no reason to hold that, merely of its own force, it necessarily fastens itself upon the property of the defendant as soon as

executed and cannot be divested of its hold by any subsequent events. It thus appears clearly that if any such events occur by which the attaching creditor is left merely in the position of an ordinary creditor who has commenced suit, and the defendant dies before judgment is obtained against him, of course he has no preference over the general creditors in the distribution of the defendant's estate. Even if judgment had been first obtained there would be no lien upon anything but land. But the advantage which the plaintiff gained by his attachment was not of such a character that it could hold a preference against other creditors, of its own force. The primary object being to compel an appearance, and that object being accomplished by the mere giving of bail, the hold upon the property attached is entirely gone. So that the process, in and of itself, is not the specific seizure or appropriation of the property attached, and there being no other claim upon the property attached to give a special preference to the attaching creditor, it necessarily follows that upon the death of the defendant before judgment, the attaching creditor has no preference that can be enforced against other creditors, and hence in case of such death, the attachment is dissolved." Speaking of the decision in *Farmers' and Mechanics' Bank v. Little,* it was pointed out that the attachment was issued in 1842, six years after the passage of the Foreign Attachment Act of 1836, and the opinion was delivered in 1844, eight years thereafter, and it was said (p. 641) : "this must be regarded as an answer to the contention that the act of 1836 made a change in this respect in the law as it was when the earlier decisions were made." These observations applied also to *Hays v. Lycoming Fire Ins. Co.,* supra. What was said by Chief Justice GREEN can now be becomingly repeated as evidencing our present thought (p. 641) : "These citations establish the law in Pennsylvania on this subject with such effect that we could not now change it without overruling all of these au-

thorities. We cannot discover any sufficient reason for doing so. . . . we are not convinced . . . that there is any real occasion for now departing from a rule so well established as this appears to be." The Superior Court recognized the rule in *Barrett v. First Mechanics National Bank,* 133 Pa. Superior Ct. 366, 3 A. (2) 36.

As evidencing the legislative intent, it is of some importance to point out the contrast between the Foreign Attachment Act and the Domestic Attachment Act of June 13, 1836, P. L. 606, 12 PS Sec. 2741 et seq. Section 42, 12 PS Sec. 2752, of the latter act specifically provides for survival in the event of the death of the defendant at any time after the issuing of the attachment. The section reads: "The death of the defendant, after the issuing of the attachment, shall not abate, or otherwise affect the proceeding thereon, but the same shall be continued and concluded, in like manner as if such defendant had lived." The fact that the legislature expressly included the above provision for survival in the Domestic Attachment Act and omitted it from the statute governing foreign attachments, passed on the same day, is a strong indication of the legislative intention that proceedings of the latter type should not survive the death of the defendant.

A writ of foreign attachment may issue only against the property of a living person and cannot issue against the property of a deceased person: *East Bangor Consolidated Slate Co. v. Badger,* 250 Pa. 422, 95 A. 559. In that case, it was said (p. 424) : "If a foreign personal represesentative of a deceased nonresident could be made a defendant in a foreign attachment, there would be interference with our statutes regulating the distribution of decedents' estates." It was pointed out that any local assets of the decedent can be reached by creditors by raising an administrator and by such a step "one of them would not be preferred to another." In *Mansfield v. McFarland,* 202 Pa. 173, 51 A. 763, where foreign executors brought foreign attachment against

property in the jurisdiction owned by a debtor of the decedent, and the writ was quashed, it was said (p. 175): "It is the settled policy of our law, that when assets of a foreign decedent are subject to local administration, an ancillary administrator must be raised for the protection of local creditors. Foreign letters confer no right to sue here. If such portion of Henry Mansfield's estate, as happens to be in this Commonwealth, be converted into money by the foreign administrator, the money can be taken outside the state and be paid out or distributed under the jurisdiction of foreign courts. Pennsylvania creditors would have to go into a foreign jurisdiction to assert their claims."

The court below was of the opinion that because section 64 of the Foreign Attachment Act, 12 PS Sec. 2966, declares that the general appearance of the defendant converts the assets attached into indemnity to answer the debt, this led to the conclusion that the death of the defendant did not abate the proceeding. This section of the act, however, provides only that instead of giving bail, the defendant may cause an appearance to be entered for him, in which case the action shall proceed as if commenced by summons, but that the attachment neverthless continues to bind the estate or effects attached. The entering of an appearance is an alternative to, and not a substitute for, the giving of bail as permitted by section 62 of the act, 12 PS Sec. 2962, in which case the attachment is dissolved and consequently section 64 has no application. The only effect of section 64 is to relieve the defendant from the necessity of giving bail by permitting him to enter an appearance and thus to substitute the property attached in lieu of bail. The latter section merely grants authority to defendant to appear and defend, as in other actions, if he wishes to do so, the attachment remaining unaffected thereby: *Konopka v. McAteer*, 313 Pa. 510, 169 A. 778.

The order of the court below is reversed and the attachment is quashed; costs to be paid by appellant out of the funds in its hands as ancillary administrator.