## Royal Pioneer Paper Box Manufacturing Co., Inc. *v.* DeJonge, Appellant.

·156

Argued March 25, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

*Eli N. Donsky,* for appellant.

*Abraham L. Shapiro,* for appellee.

OPINION BY ROSS, J., July 21, 1955:

Defendant-appellant in this foreign attachment suit appeals from the lower court's entry of judgment on the verdict after refusing motions for new trial and judgment n.o.v.

Early in the year 1950 the New York department store of Lord and Taylor gave the plaintiff paper box manufacturer an order for a large number of assorted boxes for delivery in time for the 1950 Christmas season. The boxes were to be covered by the plaintiff with silver and gold foil type paper, which was manufactured by the defendant paper manufacturer. Lord and Taylor made the arrangements with the defendant regarding the color, type and price of the paper, and the plaintiff was directed to order all of its requirements for the Lord and Taylor job from the de-

fendant. In 1950 these arrangements were executed to the satisfaction of all the parties concerned, with the result that in early 1951 the process was again instituted and the boxes were produced for the Christmas season of 1951. In 1951, however, there was disharmony in the arrangements resulting from certain manufacturing difficulties which plaintiff encountered in using the defendant's paper to cover the boxes. As a result plaintiff instituted the instant proceeding by attaching certain book accounts which it then owed to defendant in the amount of $3,003.95, claiming damages as a result of the faulty paper in the amount of $4,238.95. The lower court entered judgment on the verdict in plaintiff's favor for the excess, $1,235.00, since plaintiff admitted it owed the $3,003.95 to defendant.

Initially we should dispose of a procedural issue raised by appellant. The complaint alleges a breach of an express oral warranty that the paper would be fit for the intended use of covering the Lord and Taylor boxes. Defendant denied any express oral warranty but admitted that it knew of the intended use for Lord and Taylor. At the trial evidence was produced which indicated an implied warranty that the paper would be fit for the particular purpose for which it was ordered. No complaint was made by defendant at the time the evidence was introduced, nor did it base its motion for nonsuit and its request for binding instructions upon this variance. Where there is no objection to the testimony on the basis of the variance, it is our duty to treat the pleadings as amended to conform to the proof. *Culbertson v. Ansell*, 303 Pa. 45, 52, 153 A. 900. The only objection which defendant made concerning this implied warranty was to the court's charge which submitted the case to the jury, inter alia, on the theory of implied warranty. Then

it was too late. Defendant should have consistently objected to the introduction of evidence on the implied warranty and should at least have moved to strike it prior to the court's charge. The submission of the case to the jury on the theory of implied warranty was only in keeping with the evidence introduced at the trial without objection. Moreover, defendant has not shown on this appeal how or in what manner it has been misled or prejudiced by the variance. *Cohen v. Marian,* 171 Pa. Superior Ct. 431, 439, 90 A. 2d 373.

Our primary concern is the warranty issue. A careful reading of the voluminous record in a light which supports the verdict (*Stoner v. Penn-Brixite, Inc.,* 177 Pa. Superior Ct. 189, 110 A. 2d 904; *Coradi v. Sterling Oil Co.,* 378 Pa. 68, 105 A. 2d 98) indicates nothing which will support an express warranty. There is, however, abundant evidence of an implied warranty. It appears that Lord and Taylor, early in 1951, made its arrangements with defendant concerning the type and color of paper it desired. It was to be the same as had been used in 1950 without incident. Lord and Taylor then made its arrangements with plaintiff to cover the boxes with the paper which was to be purchased by plaintiff exclusively from defendant. The actual terms of their final agreement are in many respects vague and indefinite, but one thing is clear: They bargained with full knowledge that the paper ordered was to be used to cover the Lord and Taylor boxes. Defendant admitted, not only in the pleadings but in the testimony of its witnesses, that this purpose intended by plaintiff was communicated to it and of no doubt. In fact, that was the whole purpose of the contract. Section 15 of the Uniform Sales Act, Act of May 19, 1915, P. L. 543, 69 PS sec. 124, provides: "Where a buyer, expressly or by implication, makes known to the seller the particular purpose for which

the goods are required, and it appears that the buyer relies on the seller's skill or judgment . . . there is an implied warranty that the goods shall be reasonably fit for such purpose." Defendant asserts that since plaintiff was required by Lord and Taylor to purchase from it, there could be no reliance upon defendant's skill or judgment. We believe this fact indicates the contrary. Lord and Taylor made the arrangements concerning type and color, and when plaintiff ordered it specified the type and color required by Lord and Taylor. Plaintiff, however, did not specify quality. It merely ordered the goods, making known its purpose, leaving to the skill and judgment of defendant the task of producing the paper which could be folded and glued to the boxes by the usual methods. Traditionally, reliance is more readily placed on the manufacturer of goods which are ordered for a particular purpose, for he is the one whose skill and judgment controls the processes which determine the final quality and fitness of the manufactured product. Had plaintiff specified the quality of paper desired, giving exact specifications, it, of course, would be barred from asserting this warranty of fitness. *Hartford Battery Sales Corp. v. Price,* 119 Pa. Superior Ct. 165, 171, 181 A. 95.

Defendant contends that it is immaterial whether such warranty arose because plaintiff by its express contract waived its right to warranty. On February 27, 1951 there was a telephone conversation between representatives of plaintiff and defendant concerning the paper here involved. Admittedly this was the first contact between plaintiff and defendant concerning this order. After this conversation the defendant issued an acknowledgment of order which contained certain conditions, the pertinent ones being: "1. All terms are finally stated in this instrument. . . . All prior terms and representations, whether oral or written, are here-

by cancelled. . . . 5. The merchandise is not warranted . . . fit for any particular purpose, impliedly or otherwise." Thereafter, in March 1951, the plaintiff issued its written purchase order, which ignored the terms mentioned in the defendant's previous acknowledgment and noted on its face that the order was for the Lord and Taylor contract. Defendant did nothing further until it delivered the paper ordered.

The learned court below succinctly analyzed the situation: ". . . Of course, if, at the time of the telephonic conversation, defendant agreed with plaintiff that the paper was to be the same as that delivered in 1950 and was to be fit to be used in manufacturing boxes for Lord and Taylor, any subsequent unilaterally executed writing could not serve to relieve defendant of the obligations thus assumed. However, if a binding contract had not been created orally at that time, it might be concluded that the written acknowledgment of order sent by defendant constituted an acceptance of plaintiff's oral order. But it is instantly apparent that this writing embraced six terms and conditions under which the order purportedly was accepted. No contract could thus be formed because 'acceptance must be unequivocal in order to create a contract'. Restatement, Contracts, Sec. 58. It is fundamental that 'a reply to an offer, though purporting to accept it, which adds qualifications or requires performance of conditions, is not an acceptance but a counter-offer'. Restatement, Contracts, Sec. 60.

"Subsequent to defendant's acknowledgment of order, plaintiff sent to defendant a written purchase order which clearly set forth on its face the fact that the paper was to be used for making the boxes for Lord and Taylor. Viewing the evidence, as we must, most favorably to the verdict, it cannot be held as a matter of law that the jury was required to find that this was

an acceptance of defendant's counter-offer. It was manifestly possible to find that plaintiff's written purchase order constituted a new and different offer which was accepted by defendant when the paper was shipped. Ross v. Leberman, 298 Pa. 574, 578: Restatement, Contracts, Sec. 56."

The jury, therefore, in order to reach its verdict in favor of plaintiff believed either that there was an oral contract on February 27, 1951, or that plaintiff's order of March 6, 1951 was accepted by defendant in shipping the paper. Defendant's acknowledgment of order, coming after the telephone conversation, is superfluous to the transaction and is a self-serving declaration by defendant. That plaintiff did not agree to the printed conditions thereon is abundantly clear by its *subsequent* written order, which ignores the conditions and specifically sets forth that the paper is for the Lord and Taylor contract. If defendant did not agree to the terms of this written order it should have protested instead of shipping the goods. It most certainly realized that its prior acknowledgment was not accepted by the plaintiff. Especially is this true where, as here, there exists the peculiar situation in which plaintiff found itself. It was in the nature of a "captive" buyer, for under its contract with Lord and Taylor it could purchase the paper only from defendant. Defendant knew, and the parties understood, that the paper was to be used for Lord and Taylor boxes. The waiver of warranties is found only in the defendant's own anomalous acknowledgment of order. It was not in the telephone conversation nor in plaintiff's written order. The waiver was never assented to by plaintiff nor did it do any act to manifest such assent.

After some delay the paper was delivered and plaintiff began the process of applying it to the boxes. When used the paper jammed the machines and tore. On the

boxes it curled, wrinkled and blistered because of poor adhesion when glued. Plaintiff made various tests, changed glue and spent considerable time in trying to ascertain the trouble. These tests indicated the fault to lie with the paper which was of varied thickness and composition. After discovering this plaintiff gave proper notice to defendant, whose representative informed plaintiff that the paper would not be replaced. Since this type paper was not available on the open market and since the boxes had to be delivered to Lord and Taylor in time for Christmas, the plaintiff used additional employes and methods, solely as a result of the faulty paper, to get the boxes covered, all of which cost plaintiff additional money which is the subject of this suit. Sales Act, sec. 69 (1a, 1b), 69 PS sec. 314.

Defendant complains that plaintiff is not entitled to consequential damages. Section 69(7) of the Sales Act, 69 PS sec. 314, provides: "In the case of breach of warranty of quality, such loss, in the absence of special circumstances showing proximate damage of a greater amount, is the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty." Plaintiff claimed damages consisting of the extra man hours necessary to complete the job, an amount of overhead attributable to the added work, plus a 10 per cent. profit on the extra work. Defendant believes that there were no "special circumstances" showing these damages to be within the reasonable contemplation of the parties should there be a breach, citing *Wolstenholme v. Randall, Inc.*, 295 Pa. 131, 144 A. 909. At page 138 we find: "What is meant by the phrase 'special circumstances' as used in the Sales Act is that the buyer has communicated to the seller at the time of entering into the contract sufficient facts to make it apparent that the damage subsequently

claimed was within the reasonable contemplation of the parties." The Supreme Court then held that since the buyer informed the seller of the purpose of the purchase and the seller knew that the goods were to be used to fulfill the requirements of the buyer's customer and were to be the same as had been furnished in a previous order, the requirement of special circumstances was fulfilled. We have almost the identical situation here, where defendant knew of Lord and Taylor's requirements and the paper was to be the same as furnished in 1950. It is therefore apparent that plaintiff was entitled to consequential damages.

In *Budd v. Mutchler,* 98 Pa. Superior Ct. 420, this Court held that where the defendant breached an implied warranty that concrete blocks were fit for the erection of a garage which subsequently crumbled because of the breach, the buyer could recover not only the cost of the blocks but also the expense of removing the debris and the cost of labor and material, exclusive of the cost of the new blocks, expended on rebuilding the garage. These expenses were there said to be the "losses directly and naturally resulting, in the ordinary course of events, from the breach of warranty". And in *Griffin v. Metal Products Co.,* 264 Pa. 254, 107 A. 713, it was held that expenses incurred in good faith in endeavoring to use the articles for the purpose contemplated were recoverable when not too remote. Plaintiff here, in order not to breach its contract with Lord and Taylor, was forced by defendant's refusal, after notice, to remedy the breach to expend this extra money and manpower.

Defendant cites *Jessup and Moore Paper Co. v. Bryant Paper Co.,* 297 Pa. 483, 147 A. 519, in support of its contention that overhead is not a proper item of damages. We cannot agree. In that case, the overhead was shown to be a constant figure and not af-

fected by the breach. Indeed, the plaintiff there was not even required to put on additional employes to remedy the breach. At page 494 the Supreme Court specifically says: "There was no proof that these necessary corporate costs would have increased had the Bryant contract been completed, and such sums cannot therefore be used to reduce the damage allowable." Here employes were taken who could have performed other work profitable to plaintiff. Extra time was spent on the production in order to produce the boxes properly. Machines were tied up on this additional project which could have been used profitably on other contracts. Overhead may be a constant item in certain instances, but where, as here, additional time in the operation of the plant and employes is required to remedy the breach, the overhead attributable to that extra work is a proper item of damages. It is common knowledge that overhead is part of the financial outlay and one of the costs of production. What defendant contends for would result in an unjust loss to plaintiff of this operating cost. So too, the reasonable profit which plaintiff would have made on the work of these employes and machines during the extra time required is a loss directly and naturally flowing from the breach. The additional employes and machines working those extra hours could have been otherwise utilized on profitable jobs. See *Singer Mfg. Co. v. Christian*, 211 Pa. 534, 541, 60 A. 1087.

Defendant cites as error the manner in which the damages were proved. It appears that an official of plaintiff testified as to the extra hours, production schedules, and additional employes from a summary which he had prepared from detailed production records. The records were in court for defendant's examination but were not placed in evidence. The learned court below correctly decided that under *Keller v.*

*Porta,* 172 Pa. Superior Ct. 651, 656, 94 A. 2d 140, while ordinarily the original records are the best evidence "Where, however, the original evidence is voluminous and detailed so that an examination thereof would be impracticable in the trial court, it is within the discretion of the trial judge to admit as valid secondary evidence a summary of the original evidence made by a competent person familiar with the original records." The use of the summary was, therefore, within the trial judge's discretion and in the absence on the part of defendant of a showing of prejudice we must agree that the discretion was not here abused.

Defendant during the course of the trial made an offer to introduce in evidence depositions of two other paper manufacturers "to show that they used the same paper with the same machines on the same contract with Lord and Taylor . . . that they experienced no unusual difficulty in the manufacture of the Lord and Taylor order, and that they further stated that if they had any complaint about the paper, they would look to Lord and Taylor for any redress, and not to the supplier of the paper". The lower court correctly excluded this evidence. What other manufacturers would have done if they had had difficulty is highly immaterial to the issue of the instant case where the contractual relations were between plaintiff and defendant. No effort was made to lay a foundation by showing that the paper used by the others was of identical quality and consistency and that the conditions under which it was used by the other manufacturers were the same. In fact, the offer is much too broad to be supported by the depositions which defendant proposed to introduce. One of the witnesses had a faulty memory and could not state what difficulties he had had with the 1951 paper, if any, and what the production conditions had been. The other witness testified, when asked by de-

fendant whether he could say with any degree of certainty that the difficulties which occurred were due to the paper, "I wouldn't want to make a direct answer to that. It might be . . ."

The final contention of defendant concerns the unique situation in which plaintiff found itself as both plaintiff and garnishee. Defendant stresses that ordinarily under our law the garnishee must act in good faith and contest every inch of the way to prevent a recovery by the attaching creditor. We agree that that is the ordinary rule, but we are faced with an unusual situation here. Plaintiff and garnishee are one and the same and admittedly plaintiff used the action of foreign attachment as a means of getting jurisdiction in Pennsylvania. The jury would only be confused by any effort Royal Pioneer made as garnishee to fight Royal Pioneer as plaintiff. Furthermore, where, as here, the defendant enters a general appearance, the action proceeds as though it had been originally commenced by summons. Act of June 13, 1836, P. L. 568, sec. 64, 12 PS sec. 2966. Our Supreme Court said in *Ionian Bank, Ltd. v. Mamatos,* 340 Pa. 52, 58, 16 A. 2d 397: "The latter section (64) merely grants authority to defendant to appear and defend, *as in other actions,* if he wishes to do so, the attachment remaining unaffected thereby . . ." (Emphasis supplied.) The record here indicates that defendant undertook to defend this action as though it were an ordinary suit in assumpsit. It cannot now complain that the action should have been tried by some other procedure.

The voluminous record here indicates a long but well tried case. The prime purpose of the dealings between these parties was the supply by defendant of a paper for use by plaintiff in covering Christmas boxes for Lord and Taylor. They knew that in the prior year the same quality paper had been used with success and

benefit to both. It was contemplated that in 1951 they would repeat this transaction. That the same kind of paper would be supplied and used for the same purpose was the basis of their bargain. The sole responsibility was upon defendant to supply paper fit for this objective. There is more than ample evidence in the record to support the verdict of the jury in plaintiff's favor based on breach of warranty by defendant.

Judgment affirmed.