## Material Distributors, Inc. v. Acme Cabinet Corp.

*Harry A. Rutenberg*, for plaintiff.
*Melvin Lashner*, for defendant.
*Stanley Schlesinger*, for garnishee.

FORER, *J.*, April 9, 1975—This is a petition under Pa. R.C.P. 1272(h) to release a portion of the attached personal property seized when plaintiff started suit by foreign attachment: Pa. R.C.P. 1251, et seq. Defendant is a New Jersey corporation, with accounts receivable of $66,501.57 due from the garnishee, Broudy Supply Company, a resident of Pennsylvania.

Pa. R.C.P. 1272(h) reads as follows:

"The Court on petition of any party may, at any time after notice and hearing, release part of the attached property *if the value of the property attached is excessive compared to the amount in controversy.*" (Emphasis supplied.)

A hearing was held on March 6, 1975, at which testimony was taken and both sides presented argument. But no evidence of loss of work time or

anticipated profits on the second Philadelphia Housing Authority contract was adduced.

"The intention of section 1272(h) [of the Pennsylvania Rules of Civil Procedure] is plainly to prevent a situation in which a plaintiff attaches property of the defendant many times in excess of even the most optimistic possible recovery.": Vant v. Gish, 412 Pa. 359, 194 A. 2d .522 (1963), criticized on other grounds, 416 Pa. 11 (1964); Goodrich-Amram §1272(h). The rule is applicable to an amount which is "clearly not needed to satisfy any judgment which might be rendered. . . " Thus, the questions before the court on such a petition are (1) should any property at all be released? (2) If so, how much and what property: Goodrich-Amram §1272(h)(2). In order to answer the first of these it will be necessary to determine whether plaintiff's allegations of damage can or cannot be sustained as a matter of law.

The following facts are pertinent. Plaintiff, Material Distributors, bid on a contract with the Philadelphia Housing Authority (PHA) to install 1324 kitchen cabinets in the Richard Allen Homes project. The amount of its bid, $355,000, was computed by tabulating the lowest acceptable bids it received from various subcontractors, plus several items of expense, such as bonding and insurance; then a sum for profit was added. Since defendant, Acme, was the lowest acceptable bidder to supply cabinets meeting the particular specifications issued by PHA, plaintiff and defendant entered into a conditional contract for the purchase of said cabinets to be used by plaintiff if successful in securing the PHA contract.

After plaintiff secured the PHA contract, its contract with Acme was made final. Plaintiff alleges

that defendant failed to perform in a satisfactory manner. Defendant alleges that it gave notice to plaintiff two months before performance was due that it would be unable to supply cabinets meeting the exact specifications of the PHA; that plaintiff assured defendant that it would acquire PHA's approval for use of the cabinets defendant *could* supply, namely, ones meeting the modified specifications to which plaintiff and defendant agreed. Plaintiff denies that any such agreement was reached. Therefore, when some of the cabinets were delivered to the job site as required on December 18, 1973, plaintiff alleges it was unaware of the nonconformity and began installing the cabinets. It was then informed by PHA that the cabinets were nonconforming and unacceptable. On December 21, 1973, plaintiff gave notice to defendant that the contract would be cancelled unless defendant could cure, and if unable, plaintiff requested that defendant reclaim the delivered nonconforming cabinets. Defendant, on the other hand, filed a counterclaim in the amount of $14,478 alleging that these actions constituted a breach by plaintiff.

Defendant did not produce conforming cabinets, and plaintiff alleges it was unable to cover due to the restrictive specifications established by PHA thus requiring cancellation of the PHA contract. Plaintiff, thereby having defaulted in its PHA contract, paid $8,000 in settlement, as well as various other incidental costs in connection with that contract. Plaintiff also alleges that it lost $77,305.70 in profit which was included in the contract price.

Defendant does not dispute that the settlement and other incidental costs are properly includable in the measure of damages, assuming that plaintiff

succeeds in proving liability. But defendant alleges that plaintiff is not entitled to recover lost profits because plaintiff, having been successful when PHA again invited bidding on the same work, will receive the profit it claims to have lost under the original contract.

## DISCUSSION

The contract between the parties in this suit, being for the sale of goods, is subject to the provisions of the Uniform Commerical Code as enacted in Pennsylvania in the Act of April 6, 1953, P.L. 3, sec. 1-101, as amended, 12A P.S. §§1-101, et seq. Therefore, the proper measure of damages must be determined according to the code provisions relating to buyers' and sellers' remedies: 12A PS §§2-701, et seq., particularly section 2-715.

There are generally few decisions in the various jurisdictions which construe section 2-715. The Supreme Court of Pennsylvania, however, in Taylor v. Kaufold, 368 Pa. 538, 546, 84 A. 2d 347, 351 (1951), enunciated a test by which elements of damage should be determined:

"Where one party to a contract, without any legal justification, breaches the contract, the other party is entitled to recover, unless the contract provides otherwise, whatever damages he suffered, provided 1) they were such as would naturally and ordinarily result from the breach, or 2) they were reasonably foreseeable and within the contemplation of the parties at the time they made the contract, and 3) they can be proved with reasonable certainty."

See also Wolstenholme, Inc. v. Joseph Randall & Bro., Inc., 295 Pa. 131, 144 Atl. 909 (1929); Mac-

chia v. Megow, 355 Pa. 565, 50 A. 2d 314 (1947); Raby, Inc. v. Ward-Meehan Co., 261 Pa. 468, 104 Atl. 750 (1918). This rule was reaffirmed and clarified in Keystone Diesel Engine Co. v. Irwin, 411 Pa. 222, 191 A. 2d 376 (1963), and is the generally accepted statement of Pennsylvania law with respect to the measure of damages. See Traynor v. Walters, 342 F. Supp. 455, 462 (E.D. Pa., 1972); Adams v. Speckman, 385 Pa. 308, 122 A. 2d 685 (1956); Royal Pioneer Paper Box Manufacturing Co. v. DeJonge, 179 Pa. Superior Ct. 155, 115 A. 2d 837 (1955); Babcock Poultry Farm, Inc. v. Shook, 204 Pa. Superior Ct. 141, 203 A. 2d 399 (1964).

The scope of this rule undoubtedly includes recovery for lost profits, that being the issue before the court in Keystone. Section 2-715(2) of the Uniform Commercial Code, upon which the Keystone decision is based, provides:

"Consequential damages resulting from the seller's breach include (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise . . ."

This section has been interpreted in Keystone and several other cases as providing for lost profits where the required tests have been met: Traynor, supra; Royal Pioneer, supra. Some pre-code cases used this standard as well: Wolstenholme, supra; Taylor, supra.

Defendant argues that because plaintiff was successful in rebidding the contract with PHA, involving exactly the same subject matter, that is, the same 1324 cabinets to be installed in the Richard

Allen Homes project, plaintiff has, in reality, lost no profits and any recovery would be a windfall. Essentially defendant is asserting plaintiff's duty to mitigate damages. This argument does not go to the matter at issue now which is not whether the present contract between plaintiff and PHA is substantially the same as the first, but whether, assuming arguendo that defendant did breach its contract with plaintiff, plaintiff suffered recoverable damages (possibly including lost profits) as a result of defendant's breach. Whether plaintiff's profits, if any, on the second contract, should be applied to reduce damages for breach of the first contract relates to the extent of damages, not the fact thereof, and must be determined by a trier of fact on the merits of the case. See Neville Chemical Co. v. Union Carbide Corp., 294 F. Supp. 649, 659 (1968). Likewise, whether plaintiff was successful in mitigating damages cannot be measured in terms of its success in rebidding the PHA contract. Its consequential damages, including lost profits, must be measured on the basis of other factors. Naturally, if defendant is successful in its counterclaim, it may be entitled to a set-off.

Plaintiff, in December 1973, was prepared to employ a portion of its capacity to complete its contract with PHA. Defendant does not deny that the goods it was to supply were to be used in the performance of that contract and that plaintiff expects to make a profit. The threshhold burden of showing that consequential damages were in the contemplation of the parties has been met. The trier of fact must determine the amount of damages, if any, and the amount properly applicable in mitigation. Many factors are involved. See, e.g., Lewis v. Mobil

Oil Corp., 438 F. 2d 500 (8th Cir. 1971); Royal Pioneer Paper Box Manufacturing Co., Inc. v. De-Jonge, 179 Pa. Superior Ct. 155, 115 A. 2d 837 (1955); Traynor v. Walters, 342 F. Supp. 455, 462 (E.D. Pa., 1972); see also, Uganski v. Little Giant Crane and Shovel, Inc., 35 Mich. App. 88, 192 N.W. 2d 580 (1971); Matushita Electric Corp. of America v. Sonus Corp., 284 N.E. 2d 880 (Mass., 1972).

The right to start suit by foreign attachment is given because, in some instances, it is the only method by which a party can be subjected to the jurisdiction of the court. It also assures, should plaintiff win, that enough property will be available to satisfy the judgment. Pa. R.C.P. 1272(h) contemplates a situation in which the court can, on the basis of the pleadings, determine that the attached property is excessive. In the case at bar, the pleadings reveal that the attached property is less than the damages claimed, i.e., the difference between $77,305.70 and $66,501.57 which is $10,804.13. This court, of course, is unable to determine what, if any, the actual damages are. Because both parties are entitled to present evidence as to the amount of damages, action under Pa. R.C.P. 1272(h) is premature.

Accordingly, defendant's petition to release a part of the attachment is denied. The following order is entered.

## ORDER

And now, April 9, 1975, it is ordered that defendant's petition under Pa. R.C.P. 1272(h) to release a part of the attachment is denied.