## Grogan v. Michael, Appellant.

Argued March 22, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*Edmund K. Trent*, with him *David Turets* and *Reed, Smith, Shaw & McClay*, for appellant.

*William S. Doty*, with him *Thomas A. Thornton*, of *Doty & Thornton*, and *I. L. Giffen*, for appellee.

OPINION BY MR. JUSTICE HUGHES, May 22, 1944:

The plaintiff's statement of claim averred that Christ Michael had requested the plaintiff to secure insurance to cover and protect certain property he owned or in which he was interested. The plaintiff, having his own insurance agency, secured the insurance and charged the defendant with the premiums due thereon. These accumulated premiums over a period of years on property owned solely by the defendant amounted to $2,722.44 and as against these premiums the plaintiff credited the defendant with payments in the amount of $1,556.44. On properties in which he was interested with others, the premiums amounted to $4,393.13 and credits and payments thereon totaled $2,029.57, leaving a balance owing of $2,363.56. The total claimed by the plaintiff from the defendant was $3,920.00, with interest from the due dates. Copies of book entries of the plaintiff were attached to the statement of claim. The affidavit of defense denied the indebtedness, denied that the insurance was taken out at the orders or instructions of the defendant, but stated it was obtained for one Louis F. Michael and charged to him in the plaintiff's books of original entries. At the trial the defendant admitted Louis F. Michael, his brother, had placed certain insurance for and on defendant's behalf with the plaintiff.

The plaintiff and his bookkeeper testified to their system of keeping records by line cards and ledger book, copies of which were attached to the statement of claim and were admitted in evidence. By way of defense, the defendant testified that the plaintiff had told him he, the defendant, "didn't owe him any money" and "there was nothing due from you [the defendant]." The defendant offered a series of canceled checks to evidence payments on insurance, which plaintiff claimed were used to apply against a mortgage account he had handled for the defendant and his brother, and the plaintiff showed by his records that he had so applied these checks except one for $66.91.

The trial judge at the close of the testimony affirmed the plaintiff's point for binding instructions "for the full amount of his claim less three checks which he was not able to account for. They total $66.91. . . ." Deducting that from $3,920.00, a verdict was directed for "$3,853.09 with interest from June 2, 1936, or a total of $5,360.20."

This directed verdict was for an amount which the plaintiff's books of original entry indicated was owing on an open account. It was supported by the oral testimony of the plaintiff and his bookkeeper. The defendant admitted he had ordered his brother to purchase some insurance. There was no admission he had authorized the amounts to issue which plaintiff alleged, nor had he admitted the cost or value thereof. There was also evidence by the defendant of payment of part of the sum claimed by the plaintiff as well as an admission by the plaintiff to the defendant that the defendant owed him nothing. In this state of the record we cannot agree with the court below in the conclusion "Since the plaintiff's proof was entirely documentary and not only established his claim but conclusively refuted the contention of the defendant, the verdict was properly directed." Where account books are the basis of the plaintiff's claim, the jury must pass upon their weight

and credibility as evidence. The introduction of the books is not conclusive evidence as to their contents. The jury should examine and pass upon their appearance, the manner in which they are kept, and the character of him who offers them. "Books of original entries are evidence to prove a claim for goods sold and services rendered, if made in the regular course of business, but as they are evidence made by a party for himself, and very often incapable of being tested by other proof, they are to be guardedly received, and received only to prove a .sale and delivery, or labour for the alleged debtor, for which the law implies a promise to pay": *Hale's Executors v. Ard's Executors*, 48 Pa. 22, 23; *Fulton's Estate*, 178 Pa. 78, 87, 35 A. 880. In *McGlinn Distilling Co. v. Dervin et al.*, 260 Pa. 414, 103 A. 872, the plaintiff's evidence of sales and deliveries of liquors to Michael Dervin consisted of proving the handwriting in an alleged book of original entries called an order book, following this up with ledger entries; and an offer to prove actual deliveries by plaintiff's teamsters; and a witness Haig was called to identify the handwriting of the decedent, and of other parties whom the plaintiff alleged signed the delivery receipts; and also endeavored to identify the handwriting of certain drivers, dead or absent, whose names were signed to the delivery receipts. No evidence was produced by the defendant to contradict the testimony introduced by the plaintiff's witnesses. The court said (page 415): "The plaintiff's testimony consisted largely of oral testimony; the evidence, for instance, of Haig, that certain books were original order books; that the handwriting of various parties since dead was the handwriting of said parties; that the United States gaugers determined how much whiskey was in a barrel, and gave the figures for the same to the clerk, who entered them in the books. . . . (page 417): If all the facts produced by the plaintiff were true, the plaintiff would be entitled to recover, but it was clearly the province of the jury to pass upon

such of the evidence produced by the plaintiff as was not admitted to be true." In this case the plaintiff called witnesses to testify to the manner in which his records were kept, to identify the persons making the entries therein, to state the authority of such persons to make such entries, to the delivery of the policies, to the manner in which credits and payments were handled, as well as to dispute the defendant's statement and evidence that he had paid all his indebtedness to plaintiff and that he owed nothing.

Books of original entry, admitted in evidence, were prima facie, but not conclusive, evidence of the matter they record: *Philadelphia Inquirer Co. v. Sabia,* 90 Pa. Superior Ct. 266. "However clear and indisputable may be the proof when it depends on oral testimony, it is nevertheless the province of the jury to decide, under instructions from the court, as to the law applicable to the facts, and subject to the salutary power of the court to award a new trial if they should deem the verdict contrary to the weight of the evidence": *Reel v. Elder,* 62 Pa. 308; *Nanty-Glo Boro. v. American Surety Co.,* 309 Pa. 236, 238, 163 A. 523.

Counsel for the appellee seems to infer the Uniform Business Records as Evidence Act adds weight to the proof offered by plaintiff. In *Freedman v. The Mutual Life Insurance Co. of New York,* 342 Pa. 404, 414, 21 A. 2d 81, we said "the Act did not intend to make relevant that which is not relevant, nor to make all business and professional records competent evidence regardless of by whom, in what manner, and for what purpose they were compiled, or offered." The evidence should have been submitted to a jury, under proper instructions from the court, and there should have been a verdict returned by the jury.

Judgment reversed and a venire facias de novo awarded.