Clearfield *v.* Driver Salesmen's Union, Local No. 463, et al., Appellants.

Argued October 30, 1946. Before BALDRIGE, P. J., RHODES, RENO, DITHRICH, ROSS and ARNOLD, JJ. (HIRT, J., absent).

*Edward Davis,* for appellants.

*Emanuel W. Beloff,* for appellee.

OPINION BY BALDRIGE, P. J., December 11, 1946:

The plaintiff brought this action in assumpsit to recover from the defendant, an unincorporated labor union, certain death benefits alleged to be due her as the beneficiary of Morris Clearfield, her deceased husband.

The defendant denied liability, setting up an affirmative defense that Clearfield had voluntarily withdrawn from active membership. The jury returned a verdict for the plaintiff in the sum of $1300. Motions for a new trial and judgment n. o. v. were refused and this appeal followed.

At the trial plaintiff made out a prima facie case by submitting proof as follows. Her husband, employed in delivering dairy products, was a member of the defendant labor union in good standing in March or April 1940, when he was unable to continue his work due to cancer of the brain. His monthly membership dues were paid through the month of October 1940, and were regularly tendered thereafter, but the defendant refused to accept them.

Defendant denied tender of the dues, and for the purpose of showing that the beneficiary was not entitled to recover in this action offered its business records, which indicated that an honorable withdrawal card, upon which much reliance was placed, was issued to the plaintiff in October 1940.

Article 63, of the Constitution and Local By-laws of the defendant provided in part as follows: "Withdrawal cards shall be granted unemployed members or members leaving the business in accordance with Sections 4 and 87 of the International By-laws, provided all dues and assessments shall have been paid for the month in which said card has been applied for."

Section 4(c) of the International By-laws provides: "Any member of the International Union leaving our employment or going to work at another craft or occupation, must be given an honorable withdrawal card and cannot remain a member of the International Union. . . ."

The appellants contend that under that section the union had no other choice except to issue a withdrawal card as a result of which Clearfield's membership at the time of his death was temporarily suspended, and hence his beneficiary was not entitled to death benefits.

John B. Backhus, who was the president of the local union, was asked if he would have approved the issuance of a withdrawal card to a man who had been bedridden for eight months with cancer. His reply was: "Oh, no, I would have advised any member not to take a withdrawal card under those circumstances." The section referred to applies only to a member who voluntarily leaves his employment to work in another occupation, and not to a member who is incapacitated by reason of illness. It was not intended to deprive a member of the benefits for which he had paid. Otherwise, if he became ill or met with an accident he would be debarred from receiving benefits, by the simple expediency of the union's

issuing a withdrawal card, or, as in this case, if a member died the union could withhold death benefits. President Backhus' testimony was not controlling, nevertheless it is evident that the defendant's present position is not sound. We think the appellants' construction of this section is unreasonable and unwarranted.

Henry Gusst, an officer of the defendant, one of whose duties was to "make sure everybody pays their dues in good standing" testified that Herman Rosen, who had been decedent's foreman, took over his route and gave him, Gusst, twenty-five cents to obtain a withdrawal card for Clearfield. The fee was given to the proper union official, who issued the withdrawal card and Gusst said he subsequently gave it to Rosen. Rosen testified that during Clearfield's illness one of the union officials suggested that he speak to the plaintiff, decedent's wife, and urge her to take out a withdrawal card, as in that way the monthly dues could be saved, and when her husband returned to work he would be in good standing. It thus appears that Rosen, without consulting either Clearfield or his wife and acting solely on his own responsibility, applied for the withdrawal card and never delivered it to the former. It was not until sometime in the following December or January that he sent the card through the mail to the plaintiff. Thereafter he informed her he obtained the card so that her husband would not have to continue to pay monthly dues to maintain his membership in good standing. Rosen said the plaintiff was somewhat bewildered by his conduct and did not seem to appear to understand what it was all about.

The withdrawal card was produced and offered in evidence. On its face it certified that "M. Clearfield whose name appears on the margin of this card in his own handwriting has paid all the dues and demands and withdrawn in good standing from membership in Local No. 463." The space left on the margin for the signature

was blank. The card was never signed by Clearfield nor was any other proof offered to show a proper authentication of his withdrawal, that Clearfield knew the card was in possession of his wife or that he authorized her to receive and retain it.

The defendant submitted additional testimony to the effect that a few days prior to the decedent's death his son made oral application for reinstatement of his father to membership in defendant's union, which was refused. That testimony was denied by the son.

All the evidence was oral, with the exception of defendant's business records. But these records, consisting of entries made by defendant's office employes in the course of business could not be considered as decisive of the matters appearing therein. Their weight, as well as the credibility of the witnesses, came within the province of the jury's consideration: *Wilson v. Kallenbach,* 332 Pa. 253, 256, 2 A. 2d 727; *Grogran v. Michael,* 349 Pa. 369, 37 A. 2d 525.

As the plaintiff is entitled to have the evidence supporting the verdict considered and all the rest rejected, defendant's motion for judgment n. o. v. was properly refused *(Marchl et al. v. Dowling and Co., Inc., et al.,* 157 Pa. Superior Ct. 91, 41 A. 2d 427) as there are sufficient facts of record to support the jury's determination.

That the defendant produced more witnesses than the plaintiff was not vitally important, certainly not controlling, as neither credibility nor weight of testimony is gauged by numbers: *O'Farrell v. Mawson et al.,* 320 Pa. 316, 320, 182 A. 538. If the verdict was against the weight of the evidence the trial court should have granted a new trial, but an appellate court will not set aside a verdict which is supported by sufficient proof merely because judged by the record it is against the preponderance of the evidence, unless convinced there has been an abuse of discretion, which does not appear here: *Coyne v. John Gibbons Coal Co.,* 314 Pa. 502, 506,

172 A. 653; *Stein v. New York Life Ins. Co.*, 319 Pa. 225, 179 A. 589; *Young v. Bradford County Telephone Co.*, 350 Pa. 62, 38 A. 2d 47; *Kuskie v. Western & Southern Life Ins. Co.*, 114 Pa. Superior Ct. 593, 174 A. 585.

Assignments of error are overruled and judgment is affirmed.