## Benedict Estate

*Charles W. High,* for accountant.

*Paul M. Crider,* for claimant.

*LeRoy S. Maxwell,* for life tenant and remaindermen.

WINGERD, P. J., April 23, 1948.—Lottie Greenawalt Benedict, of Quincy Township, Franklin County, Pa., died April 30, 1946, testate. The first and final account of her executor was filed November 15, 1946. Exceptions were filed to the account and proposed statement of distribution on December 17, 1946, in behalf of Robert S. Greenawalt, who had presented a claim for

services rendered decedent during her lifetime. An auditor was appointed to pass upon the exceptions to the account and to make distribution of the balance thereon to persons legally entitled thereto. The balance, as shown by the account, was $11,443.61, the total estate of decedent having amounted to $13,523.75. Claimant, Robert S. Greenawalt, presented his claim for services, which included transporting of decedent to various doctors' offices, to the bank and on other trips around the country, including the contacting of pallbearers and minister for the conducting of decedent's funeral service. No definite sum was asked but the claim was based on a quantum meruit. The executor paid claimant $25 for services rendered after decedent's death. The auditor disallowed the claim for services rendered prior to decedent's death. Exceptions were filed to auditor's report. The question now before the court is: Shall the exceptions to the auditor's report be sustained?

Claimant was a nephew of decedent. He produced, in support of his claim, a small black book, on which there were entries covering 13 pages. He was allowed to state that this book was his book of original entries of the services rendered by him to decedent. This was objected to and it is somewhat doubtful whether claimant had a right under the Evidence Act of May 23, 1887, P. L. 158, 28 PS §322, to testify to this extent. He had a right to testify that a certain book or record was his book of original entries or his business records kept in the course of his business or profession, for the reason that such testimony is, in reality, testimony as to an existing present fact and not to a fact occurring prior to the death of decedent: Barclay's Estate, 20 D. & C. 626. On this theory, the auditor allowed him to state that this book was his memorandum or book of entries of services rendered by him for decedent during her lifetime. It seems to this court that the admission of this evidence was very

doubtful for books of original entries or business records should show on their face the matters to which they refer. The book in question was not such a record as comes within the designation of a book kept in the course of claimant's business for it showed on its face that, with the exception of some entries made in the back of the book, concerning the price at which certain horses had been sold at a sale, it contained nothing but items under the heading "Lottie G. Benedict". The auditor, in his opinion, states "The entries purporting to show the services performed are all similar to the following examples, taken at random from the book:

"Lottie G. Benedict

1944            (page)  7

Jan  8    Waynesboro
Jan 22       "

(page)  9

Nov.18    Waynesboro  to  doctor
Dec.23       "         sick for to weeks.  We were going back and fored every day for to weeks."

Such a book is not a book kept by claimant in the business or profession in which he was engaged and was, at the most, only a record which, if the entries were made at or about the time he performed the services, could have been used by him to refresh his memory if he were a competent witness.  The auditor held that any testimony of claimant other than identifying the book was not admissible and further refused to admit the book as a business record or as a book of original entries kept in the course of claimant's business or profession.

As the book shows clearly only an account against one individual and that it was not a general book kept in the course of the business or profession of the claimant, it is not admissible as evidence to support a claim against decedent.  In Fulton's Estate, 178 Pa. 78, 87,

it was stated, quoting from Hale's Executors v. Ard's Executors, 48 Pa. 22:

" 'Books of original entries are evidence to prove a claim for goods sold and services rendered, *if made in the regular course of business,* but as they are evidence made by a party for himself, and very often incapable of being tested by other proof, they are to be guardedly received, and only to prove a sale and delivery, or labor for the alleged debtor for which the law implies a promise to pay'." (Italics supplied.)

In that case the book in question was a separate book containing no charges, except against decedent, and the court stated, in commenting upon its admissibility in evidence (p. 87) :

"But there is an insuperable objection in the present case, that the book is not one of entries in the regular course of business. It is a separate book containing no charges except against the decedent. This is explained to have been at the decedent's request, but the claimant was not a competent witness to prove such request. No precedent has been shown for the admission of such a book, and the analogies are all against it. While the question does not seem to have arisen in this form yet all the authorities hold that the books must show that they are kept in the regular routine of business. That is one of the greatest safeguards of the reliability of such evidence." See O'Bold's Estate, 221 Pa. 145; Grogan v. Michael, 349 Pa. 369, 372-373.

In Reddelien v. Atkinson, 46 Pa. Superior Ct. 159, 163, it was held that notations made on check stubs were merely detached memoranda and in no sense original book entries and are not admissible in evidence.

The Uniform Business Records as Evidence Act of May 4, 1939, P. L. 42, 28 PS §91, does not alter the law as set forth in the foregoing cases. It applies, in its own words, only to records made *"in the regular course of business* at or near the time of the act, condition or event * * *"*. (Italics supplied.) The auditor was

correct in refusing to admit, as evidence, the book offered in the instant case.

Claimant offered, in support of his claim, the oral testimony of certain witnesses. One witness testified that she saw claimant once at decedent's home and, at that time, he had been called in because decedent was ill and that she heard decedent say "Robert is good to me. He will be taken care of". Another witness, a neighbor, stated that he lived in sight of the property where decedent lived and that she had lived there a good many years and that during a year or two before decedent's death, he saw Mr. Greenawalt, claimant, take decedent out in his automobile 15 or 18 times but he could not recall any dates; that he had talked to decedent but she had never said anything about paying claimant, her nephew, for taking her around, but that he knew claimant had brought her to Waynesboro several times and to Chambersburg. This witness further stated that he had hauled decedent at different times and that some of the times she paid him and some of the times she didn't, also, that decedent often told him "That if anything did happen, to send for Robert and he would be paid for it". (Robert is claimant). The third witness stated that she had seen claimant during the last 2½ years of decedent's life frequently about decedent's home but she had never seen him take her away or bring her home. She stated, however, that decedent had told her that claimant had taken her, speaking about Chambersburg and Waynesboro and mentioning Marion, but she never mentioned anything about paying him or not paying him for such services. A taxi driver, operating in Waynesboro, was called, who testified as to his charges for hauls in the community or area which included decedent's home, and he testified that the regular rate was 30¢ a mile, and then as to what he would be entitled to charge from the

community in which decedent lived to Chambersburg, which was $4.50, and to Waynesboro, which was $1.25.

Clearly the oral evidence is too indefinite and incomplete to support any claim for services rendered decedent prior to her death. The fact that a nephew takes his aunt out in his automobile 15 or 18 times in a year or two years, which would be only about once a month, or once in two months, is not the kind of service from which a contract to pay for the transportation on the part of the aunt can reasonably be implied. No demand was made by claimant during the lifetime of decedent, who was perfectly able to pay, although the services in question began approximately 2½ years before decedent's death. Furthermore, there was evidence that when other people transported the aunt she at times paid them, which seems to indicate that if the services were to be paid for, the aunt would, in all probability, have paid her nephew at the time the services were rendered or after some reasonable time or at some periods during the 2½ years. The claim in itself is a stale claim and such a claim should always be looked upon with suspicion when made against an estate of a decedent. Even if it were concluded that the aunt intended that claimant be paid, and he was not paid, there is no basis on which to find what the services were and what they were reasonably worth. The only evidence as to them is that the nephew transported the aunt 15 or 18 times in a year or two years and that she said that claimant had taken her to Chambersburg and Waynesboro and mentioned Marion. The distances to the places mentioned are very different and we have no knowledge how many trips were made to each place. Any conclusion reached would be merely a conjecture. The evidence as to the value of the alleged services is wholly unsatisfactory and indefinite. No claim against decedent's estate can properly be allowed on the evi-

dence produced: Gilbraith's Estate, 270 Pa. 288. The auditor was correct in disallowing the claim.

Now, April 23, 1948, the exceptions to the auditor's report are overruled and the auditor's report is confirmed.