## Vantell v. Black Top Paving Company

*David W. Patterson*, for plaintiff.

*Leo H. McKay*, for defendant.

ROWLEY, P. J., February 7, 1952.—This matter is before the court upon plaintiff's motion for a new trial. The motion assigns as error the action of the court in admitting in evidence the diary of an inspector employed in the resurfacing of a highway. Plaintiff particularly complains because the inspector who kept the diary was not called as a witness.

In pursuance of a contract with Pennsylvania Highway Department, defendants resurfaced State Highway Route No. 358 which extends westwardly from the Borough of Greenville. During progress of the work, on June 26, 1950, plaintiff drove westwardly over the route. At a point about five miles west of Greenville, he states the highway was slippery and unfit for motor vehicle travel in consequence of a recent application of top-dressing. Plaintiff states that when his automobile reached the newly surfaced portion of the highway, the car "slid", went out of control, left the highway and collided with a culvert, seriously injuring him. The jury returned a verdict for defendants.

It was the claim of the defense that the road at the place of accident was not slippery and that no resurfacing had been recently done in the immediate area.

Defendants called as a witness D. A. Bryden, district construction engineer for the Pennsylvania Department of Highways, a registered engineer employed by the Highway Department for 30 years, who had general supervision over all construction work in the district. The witness generally visited the work weekly. Bryden was asked the date of completion of the work at the place where the accident occurred. His answer was that the information as to that was taken from the inspector's diary. (At this point plaintiff objected

to admission of the inspector's diary.) The witness stated that the diary is "a record that must be kept on every job and turned in to us at the end of the job." The witness stated that upon his weekly visit to the job, he generally went over the details of the work done since his former inspection, and determined what records the inspector is keeping, and, on occasions, checked the inspector's diary against the work as completed. After final completion the inspector's diary is delivered to the district office of the Highway Department in Franklin where the witness is thereafter in charge of the records.

After this testimony as to the mode of preparation of the diary and its present custody, the court overruled the objection and authorized the witness to refer to the diary. Thereupon the witness referred to the diary and stated that the work of resurfacing the area where the accident occurred was completed June 14, 1950.

The single point for consideration is whether the inspector's diary of the work was erroneously admitted.

There seems to be some confusion as to what books are admissible. We believe this is due in part to the failure to recognize that the legislature has greatly liberalized the rules governing the point. In applying earlier decisions we must keep in mind constantly the new statutes. As a general rule, book entries made by third persons in the ordinary course of business at the time a transaction occurred, and of matters within the knowledge of the person making the entry, which he had no motive to misrepresent, and which it was his duty to make, are admissible in any proceeding where the subject matter is relevant to the issue: Trial Evidence, Henry, §94. The rule was originally one of necessity and before resorting to it a party was required to show that the person who made the entry

was dead or beyond the jurisdiction of the court. But the later decisions have gradually relaxed this rule in the interest of changed business conditions, and have applied the doctrine that such entries, being contemporaneous with the transaction which they record, are part of the res gestae and therefore, so far as their competency is concerned, it should make no difference whether the person who made them were living or dead.

Owing to the great increase in the volume of modern business and the specialized departments into which it is often divided, each in a sense ignorant of the details of the others, the courts have recognized an administrative necessity of further relaxing the hearsay rule previously in force so as to permit the introduction of books and records when produced and identified by one in control of them or under whose supervision they were made, even though the entries were not made by him, and without proof of the death or absence of the person who made them: Specktor et al. v. Victory Ins. Co., 282 Pa. 429, 432.

Prior to the Act of April 15, 1869, P. L. 30, the parties to an action were not competent witnesses. In this situation, where no testimony of third persons was available, the books of original entry of the transaction were admissible, the oath of the party being received merely to prove the books. If the entries were made by a clerk, however, his oath was the primary evidence, and the account was used to refresh his memory. Since the passage of the above act, the party stands in the same position the clerk stood prior thereto, and his testimony, when it can be produced, and if he has personal knowledge of the transaction, is the primary evidence, the entries being used to corroborate him or to refresh his memory, unless he is unable to recall the transactions, in which case the entries become the best evidence of it. Entries not admissible

as such are competent for the purpose of refreshing the memory of the witness. Because the shop-book rule enabled an incompetent person to testify, and because the book entries became evidence for consideration of the jury without proof other than that they were books of original entry, courts imposed rather rigid limitations upon what were admissible as books of original entry. The early cases are full of expressions that such evidence is received only from necessity and that the custom to which such necessity gave rise extended only to goods sold and labor performed; that it was exceptional and dangerous in character and would not be extended: Fulton's Estate, 178 Pa. 78; Pringle v. Neff, Exec., 112 Pa. Superior Ct. 547. Book entries of a litigant are merely declarations in the party's own interest, hence their admission was strictly confined to the necessity which gave rise to the rule. However, questions of competency of book entries have been largely eliminated by the Uniform Business Records as Evidence Act of May 4, 1939, P. L. 42, which provides that:

"A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition, or event and if, in the opinion of the Court, the sources of information, method and time of preparation were such as to justify its admission."

Business is defined as "every kind of business, profession, occupation, calling or operation of institutions, whether carried on for profit or not." This is a wide departure from the stringency of the old shop book rule. Under this recent statute countless records are admissible which would have been excluded under the earlier rule.

The Supreme Court discusses the requirements of this recent act in Paxos v. Jarka Corporation, 314 Pa. 148, where the question was as to the admissibility of certain hospital records. The court said:

"To sustain the admission of entries such as these, they must pass the rules which guard the admission in evidence of declarations, book accounts and records though offending the letter of the rule against hearsay. Coming from this particular institution, the mere existence of these records might be circumstantially probative of their truth, but that alone is insufficient. To avoid the hearsay rule three probative elements must be present. We may admit from an examination of these records that they satisfy the first requirement; they were made contemporaneously with the acts which they purport to relate; there is no doubt about the way these records are made up. The fact that each case bears its own number makes it difficult, if not impossible, to invent such a record. Its individual and mechanical integrity may be guaranteed by its form, the manner of its keeping and the institution from which it came. Secondly, at the time of making, it was impossible to anticipate reasons which might subsequently arise for making a false entry in the original. No motive to falsify the records is suggested by their background. Undoubtedly, in an institution of the character of this hospital, there is an utter lack of all motive to misrepresent.

"The third and primary, probative element of this, as of all evidence, however is the *knowledge* of the person responsible for the statements; by that knowledge the truth of the facts he narrates may be tested. Particularly is this so where the existence or truth of a fact stated depends not on the result of mere occular observation but is the product of the application of scientific principles to certain observed conditions. In

other words, such evidence must be the opinion of a person so qualified as an expert in a field as to be capable of drawing a sound conclusion concerning a condition not visible but reflected circumstantially by the existence of other visible and known symptoms."

In Freedman v. The Mutual Life Insurance Company of New York, 342 Pa. 404, speaking of the above act the court declared:

"The legislature certainly intended thereby an extension of the old 'shop book' rule and to make professional records competent documentary evidence under the circumstances set forth.

"We agree with plaintiff that the Act did not intend to make relevant that which is not relevant, nor to make all business and professional records competent evidence regardless of by whom, in what manner, and for what purpose they were compiled, or offered. . . .

"The fact that the person who made the records was, in each case, available to testify does not eliminate the basis for the admission of the written proof.

" 'Moreover, amidst the day to day details of scores of hospital cases, the physicians and nurses can ordinarily recall from actual memory few or none of the specific data entered; they themselves rely upon the record of their own action; hence, to call them to the stand would ordinarily add little or nothing to the information furnished by the record alone.' . . .

"The rigid limitations upon the shop-book rule, whereby tradesmen were permitted to show the number and price of materials furnished and the value of services rendered, are self-explanatory. They were made necessary by the ever-present possibility of fraudulent, self-serving entries which might be relied upon to advance false claims against those who had no op-

portunity to inspect or correct the books. The reluctance of the Courts to extend this rule to claims for professional services, the value of which might well be difficult of ascertainment and demonstration, is understandable."

The admission of books or records under the Uniform Evidence Act must still be weighed by the jury as to their appearance, the manner in which they are kept and the character of him who offers them: Grogan v. Michael, 349 Pa. 369.

In Commonwealth v. Harris, 351 Pa. 325, a colored defendant, convicted of murder, complained that the Commonwealth had failed to subpoena the hospital record which contained an entry by the physician who attended the deceased, that deceased had been shot by a white man. The court held that the Act of 1939 obviously means that the "act, condition or event" recorded in the hospital must be germane to the physical or mental condition which caused the patient to come to the hospital for treatment.

In Davidson et al. v. John Hancock Mutual Life Insurance Company, 152 Pa. Superior Ct. 63, the principal issue of fact was as to the date the policy was issued. A page was attached to the original application entitled: "For Home Office Use Only", on which appeared a number of entries pertaining to the policy, including a statement as to the date on which the policy was approved. The Superior Court held that this page was admissible under the Uniform Business Records Act, if presented by a properly qualified witness as a record made in the regular course of business. It further held that the witness, who had not made the entries, likely would have been able to identify the record and to testify to " 'the mode of its preparation, and if it was made in the regular course of business

at or near the time of the act' which would suffice to meet the requirements of the statute and make its admissibility a matter for the opinion of the Court".

In the instant case, Engineer Bryden was in no sense a party to the contest between plaintiff and defendant. He testified that an inspector's diary is kept on every job and is returned to the Highway Department for its records upon completion of the particular job. He was charged with supervision of the work of the inspector. He visited the work weekly or so, when he discussed the progress of the work with the inspector, and examined the diary from time to time. Presumably the record of completion of the particular area was made two weeks before the accident. The entries in the diary included a recording of the inspector's daily observations as to the progress of the work.

The record of the "event" was made in the "regular course of business" at or near the time of the event by one whose duty it was to observe and record the event. The identity of the record and the mode of its preparation was attested by the person who was both the custodian of the completed record and who supervised the work covered by the record.

In our opinion, the sources of information of Engineer Bryden, the method and time of the preparation of the record, and its present custody were such as to justify its admission.

### Order

And now, February 7, 1952, this matter came on for argument upon plaintiff's motion for a new trial, and same was argued, whereupon, after due consideration, it is ordered, adjudged and decreed that the motion be overruled and the prothonotary is directed to enter judgment in accordance with the verdict.