Keller *v.* Porta, Appellant.

Argued October 1, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Richard S. Oyler,* with him *Samuel H. Jubelirer* and *Jubelirer & Smith,* for appellant.

*Robert C. Haberstroh,* with him *Amon Davis* and *Alexander A. Notopoulos,* for appellee.

OPINION BY GUNTHER, J., January 20, 1953:

This is an action on a book account by Samuel W. Keller, trading as Keller Motor Sales, for labor and materials furnished to John M. Porta, appellant, in the amount of $917.23. A jury rendered a verdict for plaintiff in the full amount of his claim. Defendant filed a motion for a new trial alleging trial errors in (1) the admission of evidence, and (2) certain instructions by the trial judge in his charge. Defendant now appeals from the dismissal of his motion for a new trial.

Plaintiff conducts an automobile and truck repair business in the City of Altoona as a Mack truck agency. Plaintiff's claim may be grouped into two categories:

(1) reimbursement for monies paid by plaintiff on behalf of defendant to Mack agencies at Pittsburgh, Pennsylvania, Allentown, Pennsylvania and Chicago, Illinois; and (2) for truck parts and labor furnished by plaintiff to defendant over a period of approximately four years.

The evidence establishes that the claim for reimbursement arose out of an arrangement which existed between the parties whereby plaintiff would guarantee payment of accounts for services performed on defendant's truck which had broken down while away from home to enable defendant's truck to be released immediately. For example, if defendant's truck would break down in Pittsburgh (as was the situation), defendant's driver would take the truck to the local Mack agency in the area, the necessary parts and labor would be performed on the truck and the truck released after the Pittsburgh Mack agency would contact plaintiff and plaintiff guarantee Pittsburgh agency's charges. The usual and accepted procedure was for the out-of-town agency to bill the plaintiff, the plaintiff pay the out-of-town agency and then bill the defendant. Plaintiff, on three occasions pertinent here, was called upon and did pay the bills incurred by defendant at the three mentioned cities.

Defendant does not deny that the labor and materials were advanced by Mack agencies in other cities nor that plaintiff may have paid said bills. His complaint is that in one or two instances the charges made by the out-of-town Mack agencies were too high. For example, one of such charges was a bill from a Chicago Mack agency of $28.65 to install an exchange fuel pump. Defendant contends that the labor charges made were unreasonable in light of the amount of work *normally* required to make such repairs. Plaintiff, on cross examination, stated that perhaps the amount of

the charge may have been a little high compared to the Altoona labor market, but added that the nature of the job might have required a repairman going several miles to replace this pump, necessitating the higher labor charge. On this phase of the case, it was clearly defendant's burden to show that the charges were unreasonable, plaintiff having previously shown that he had paid the bills on behalf of defendant. "If the charges were not reasonable, it was a matter of defense": *Clifford v. Hicks,* 95 Pa. Superior Ct. 182, 183; Cf. *Grogan v. Michael,* 349 Pa. 369, 37 A. 2d 715. As we have said previously, plaintiff in this portion of his claim is seeking reimbursement for funds actually paid by him in emergency situations for defendant, for defendant's sole accommodation and to preserve in many instances perishable goods loaded in defendant's trucks at the time when they had broken down in Pittsburgh, Allentown and Chicago. If the charges, therefore, were unreasonable, it was incumbent upon defendant to bring in his drivers as witnesses to refute the reasonableness of the charges. See *Clifford v. Hicks,* supra; *Grogan v. Michael,* supra.

Defendant complains that plaintiff was not qualified to testify as to the fair value of labor in the Pittsburgh, Allentown and Chicago areas. The record discloses that plaintiff testified he had been in the Mack agency business for 15 to 18 years; that he was familiar with Mack trucks, parts for Mack trucks and the labor to install such parts. Plaintiff was asked whether the charges made by these out-of-town agencies were fair, reasonable and just charges and was permitted, over defendant's objection, to testify in the affirmative. He also testified that the charges for materials for Mack agencies were standard prices so that defendant's complaint deals basically with the witness' qualification to testify as to the fair value of labor in different labor

markets. The fact of the matter is, however, that plaintiff paid these charges at the request of defendant, at the time they were incurred, and approved by the defendant's truck drivers when faced with an emergency breakdown. In light of these circumstances, it was not reversible or harmful error for the court below to permit plaintiff to so testify. If the charges were unreasonable, the time to complain was at the time the charges were incurred, not after plaintiff had paid that which he could assume the defendant or his servants had approved; and complaint should have been made to the repairman, not the plaintiff, who was merely paying a debt incurred by defendant.

A large portion of plaintiff's claim deals with a differential assembly. The record discloses that on March 31, 1947, this differential assembly was sold to defendant at a net price of $453.48. Defendant contends that he never received this differential assembly; that on the contrary defendant went to Johnstown, Pennsylvania, and there purchased the differential assembly from another party; that plaintiff's charge therefor is improper. This conflict in the testimony squarely raised an issue of fact for the jury which found adversely to defendant's contention. Defendant's complaint as to this item of charge, however, is that the trial court removed this question of fact from the jury's consideration by stating the following after a request for specific instructions by defense counsel: "There is no dispute about the items except as to the payment". Defendant, however, has severed this portion of the charge from its full context for the court below had previously charged the jury as follows: "Now, as to the other $400.00 that is disputed. The defendant said he paid that on account, and that he did not buy any differential costing $475.00 from the plaintiff. He said he did buy one, but not from the plaintiff, he bought one

from Leitenberg Brothers in Johnstown. Well, we don't know anything about that, that is for you to determine the matter of credibility there. The plaintiff says he delivered it to him and he got it and paid for it all but $53.00, or whatever the amount is". Viewed as a whole, the charge fairly submitted this question of fact for the jury's consideration; the judgment cannot, therefore, be reversed solely because one isolated statement in the charge is subject to criticism. *Capristo v. Gross,* 133 Pa. Superior Ct. 61, 1 A. 2d 575.

Defendant also complains that the court below erred in admitting plaintiff's Exhibit A, explained hereafter. Plaintiff called as a witness on his behalf his bookkeeper who testified that she had been the bookkeeper for upwards of five years; that she had in her possession in court all the invoices representing amounts due plaintiff by defendant; that she had prepared Exhibit A from these original invoices which contained approximately 248 items of charge taken from the 63 invoices and which dated from April 22, 1944, to March 25, 1948; that Exhibit A was nothing more than a summary of these 63 invoices containing the 248 items of charge; that Exhibit A accurately set forth the true and correct amount due and owing to plaintiff. Defendant objected to the admissibility of this Exhibit A on the ground that the invoices were the original books of entry and not Exhibit A; that a summary made up from invoices as original entries is inadmissible. Exhibit A is not, as the court below stated, a book of original entry. The best evidence rule normally requires that the original records, in this case the invoices, be submitted into evidence when the purpose is to prove the contents thereof. Where, however, the original evidence is voluminous and detailed so that an examination thereof would be impracticable in the trial court, it is within the discretion of the trial judge

to admit as valid secondary evidence a summary of the original evidence made by a competent person familiar with the original records. In this case, there were 63 invoices including 248 items of charge. To have required plaintiff to have introduced and proven each of these invoices would have overburdened the court and unduly confused the jury. The best evidence rule is not inflexible. Where, as here, the original records are in court and available for examination by defendant and where the witness testifying to the summary made therefrom is available for detailed cross-examination, it rests within the sound discretion of the trial judge as to the admissibility of a compact summary as a substitute for the voluminous original records. Defendant does not demonstrate wherein he was prejudiced. The invoices were in court, available to defendant, and full opportunity afforded to cross-examine the bookkeeper. We find no abuse of discretion by the court below on this phase of the case. This rule has been followed in a majority of other jurisdictions. Cf. *Berthold-Jennings Lumber Co. v. St. Louis I. M. & S. R. Co.*, 80 F. 2d 32; *Hooven v. First National Bank*, 134 Okla. 217; *Jordan v. Osgood*, 109 Mass. 457; note, 66 A.L.R. 1206; 20 Am. Jur. §449. Defendant finally complains that he was not given credit for a $400 payment on account, and in support of this contention introduced into evidence an exhibit which was a check payable to plaintiff in the amount of $400 and dated May 18, 1945. It is conceded by plaintiff that this $400 was received by them and did not appear in the statement of summary known as Exhibit A. On rebuttal, however, the bookkeeper was called and testified that the $400 payment of defendant was a cash transaction, i.e., that defendant came into plaintiff's garage, purchased some parts in amount of $400; gave his check in full payment and the entry entered

into the cash book of plaintiff's records. For this reason, the transaction would and did not appear in plaintiff's accounts receivable records, but did appear as a cash sale. Although a receipt which this check reflected is normally evidence of payment, it does nothing more, in these circumstances, than to shift the burden of going forward with the evidence to explain the nature of the receipt and for what it was payment. That was clearly done by plaintiff in rebuttal and raised a question of fact for the jury which found in plaintiff's favor.

Careful review of this record clearly convinces us that no trial errors were committed, and the motion for a new trial was properly dismissed.

Judgment affirmed.