J-S09037-26

2026 PA Super 73

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
KYLEN PRATT :
:
Appellant : No. 3013 EDA 2024

Appeal from the Judgment of Sentence Entered September 27, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005174-2022

BEFORE:  MURRAY, J., LANE, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.: **FILED APRIL 17, 2026**

Appellant, Kylen Pratt, appeals from the judgment of sentence entered

in the Court of Common Pleas of Philadelphia County on September 27, 2024.

After a careful review, we affirm.

On September 23, 2024, Appellant was tried by jury on the charges of

First-Degree Murder, Possession of an Instrument of Crime (PIC), Abuse of a

Corpse, and Tampering with Evidence. The relevant facts adduced at trial, as

summarized by the trial court, are as follows:

> On February 17, 2022, Naasire Johnson, a 20-year-old
> openly gay man, took a ride share from his home [in] West
> Philadelphia to North Philadelphia, then walked to the 2900 block
> of West Oxford Street, the block where Appellant lived.
> Information from his mobile phone indicated that the device
> remained there until the early morning of February 18, 2022.
> When Mr. Johnson did not return home, his grandmother
> repeatedly called his phone, but there was no answer. The

---

[*] Former Justice specially assigned to the Superior Court.

following day, February 19, 2022, she filed a missing person report.

On February 20, 2022, two bystanders were walking down a path near Brewerytown, of the Kelly Drive, where they saw a burnt object with a recognizable foot. Mr. Johnson's body was bunt beyond recognition of any characteristics. In particular, his throat (trachea and jaw) and genitals were burnt away. The Medical Examiner opined that these areas would have been potential repositories for DNA evidence of sexual activity. A bullet was also recovered from Mr. Johnson's neck. Homicide investigators started culling missing persons reports and were able to narrow their search to Mr. Johnson because the remains were found to have braces, as did Mr. Johnson. The body was ultimately identified as Naasire Johnson through DNA testing against samples from his home.

Based upon an anonymous tip, police focused on Appellant and obtained his mobile phone records. The location information showed that Appellant's phone and Mr. Johnson's phone were together in the vicinity of Appellant's home. until about 3:00 A.M. on February 18, 2022. Both phones then moved together to the vicinity of where Mr. Johnson's body was found on February 20th. At that point, Mr. Johnson's phone stopped sending information. Appellant's phone left that location, but returned the following night to the same location where the body was found.

Police then executed a search warrant at Appellant's home, where they found bleach spots on the carpet in the back bedroom as evidence of cleaning. The carpet and pad were lifted, and blood stains were found on the floor below. Police also found other blood spatter evidence. The blood was submitted for testing and was found to be a DNA match for Naasire Johnson. Also found in Appellant's home was a 9mm handgun with ammunition, which was consistent with the bullet found lodged 'in the cervical spine of Mr. Johnson's neck.

A search of Appellant's phone also revealed deleted searches of news stories regarding the recovery of Mr. Johnson's body, and deleted searches for male-on-male pornography, sex with dead bodies and the traits of a psychopath. The phone also had videos showing Appellant in his bedroom with what appeared to be the same firearm recovered by police.

Tr. Ct. Op. at 2-3.

Appellant was convicted on all counts and was sentenced on September 27, 2024, to life imprisonment on the murder conviction, and consecutive sentences of two-and-a-half to five years' incarceration on the PIC conviction, one to two years' incarceration for abuse of a corpse, and one to two years' incarceration for tampering with evidence.

Appellant filed post-sentence motions on October 7, 2024. The trial court denied the motions on October 21, 2024. Appellant filed a timely notice of appeal on November 8, 2024, and a concise statement pursuant to Pa.R.A.P. 1925(b) on February 26, 2025. This appeal follows.

Appellant raises the following three issues in his brief:

I. DID THE TRIAL COURT ERR WHEN IT PERMITTED DETECTIVE DALY TO CREATE AND PRESENT A CHART AND TESTIFY THAT THE TIMING ADVANCE RECORDS CONTAINED IN APPELLANT'S CELL PHONE RECORDS ESTABLISHED THAT THE DECEDENT AND APPELLANT WERE TOGETHER AT THE TIME OF THE KILLING IN VIOLATION OF PA.R.E. 1002 AND 1006 AND WITHOUT PRODUCING A WITNESS TO TESTIFY THAT THE INFORMATION CONTAINED IN THE RECORDS WAS AUTHENTIC AND UP TO DATE?

II. DID THE TRIAL COURT ERR WHEN IT DENIED APPELLANT'S MOTION *IN LIMINE* TO PRECLUDE THE COMMONWEALTH FROM INTRODUCING EVIDENCE APPELLANT'S GOOGLE SEARCHES FOR "MALE-ON-MALE PORNOGRAPHY", "HAVING SEX WITH DEAD BODIES," AND "TRAITS OF A PSYCHOPATH?"

III. DID THE TRIAL COURT ABUSE ITS DISCRETION IN SENTENCING APPELLANT TO LIFE IMPRISONMENT WITHOUT THE POSSIBILITY OF PAROLE FOLLOWED BY A CONSECUTIVE SENTENCE OF FOUR AND ONE-HALF TO NINE YEARS OF

IMPRISONMENT IN LIGHT OF APPELLANT'S AGE, PERSONAL CIRCUMSTANCES AND PROSPECTS FOR REHABILITATION?

Appellant's Br. at 4.

Appellant's first issue challenges the admission of a chart summarizing certain cell phone data under Pennsylvania Rules of Evidence 1002 and 1006. When considering the admission of evidence, our standard of review is very narrow. Our review of a trial court's evidentiary ruling is limited to determining whether the trial court abused its discretion. *See Commonwealth v. Dengler*, 890 A.2d 372, 379 (Pa. 2005). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Id.* (citation omitted). "To constitute reversible error, an evidentiary ruling must not only be erroneous but also harmful or prejudicial to the complaining party." *Commonwealth v. Lopez*, 57 A.3d 74, 81 (Pa. Super. 2012) (citation omitted).

Pennsylvania Rule of Evidence 1002, also known as the "best evidence rule" provides, "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules, other rules prescribed by the Supreme Court, or a statute provides otherwise." Pa.R.E. 1002. A Rule that "provides otherwise" is Pennsylvania Rule of Evidence 1006, which states,

> The proponent may use a summary, chart, or calculation to prove
> the content of voluminous writings, recordings, or photographs

that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

Pa.R.E. 1006.

Here, the Commonwealth received cell phone data from the victim and Appellant. Detective Robert Daly, an expert witness in the field of call detail records analysis, was called to testify to the details of the cell phone data including call records and "timing advance records." N.T., 9/26/24, at 73. Detective Daly created a report summarizing the phone records which the Commonwealth introduced as exhibit C-80, and the Detective based his trial testimony on this summary. Appellant's issue is that the original "timing advance records" from T-Mobile stated that information in the records "may be subject to change" when Detective Daly's report omitted this language. Appellant's Br. at 15. Accordingly, he argues, the admission of this evidence violated Rule 1002 because the original records with this statement were not shown to the jury and Rule 1006 because the report did not accurately summarize the original records. *Id.* at 16.

In *Keller v. Porta*, 94 A.2d 140 (Pa. Super. 1953), the appellant owed the appellee for repair expenses. At trial, the appellee called his bookkeeper as a witness to testify to the charges for which the appellee was requesting reimbursement. In that case, there were sixty-three invoices including 248 items of charge, so the bookkeeper created a list itemizing the charges. The trial court admitted as an exhibit the bookkeeper's list as opposed to the

original invoices. *Id.* at 142. On appeal, the appellant argued that the list summarizing the charges was inadmissible on the ground that the invoices as original entries should have been admitted. This court affirmed, holding that it would have overburdened the court and unduly confused the jury to have required the appellee to introduce and prove each of the original invoices. We stated the following:

> The best evidence rule normally requires that the original records, in this case the invoices, be submitted into evidence when the purpose is to prove the contents thereof. Where, however, the original evidence is voluminous and detailed so that an examination thereof would be impracticable in the trial court, it is within the discretion of the trial judge to admit as valid secondary evidence a summary of the original evidence made by a competent person familiar with the original records. . . . The best evidence rule is not inflexible. Where, as here, the original records are in court and available for examination by defendant and where the witness testifying to the summary made therefrom is available for detailed cross-examination, it rests within the sound discretion of the trial judge as to the admissibility of a compact summary as a substitute for the voluminous original records.

*Id.* at 142-43.

Here, Detective Daly was admitted as an expert in in the field of call detail records analysis without objection. N.T., 9/26/24, at 95. He personally compiled the summary report from which he testified. Call Data Records Report, 2/7/24, C-80 at 1. Accordingly, he was a "competent person familiar with the original records." *Keller, supra*. Additionally, the records were voluminous. The "timing advance records" provided by T-Mobile to the police spanned two months including the dates January 23, 2022 to March 23, 2022. *See* T-Mobile Metro Custodian of Records Certification, 4/4/22. This type of

data updates every few minutes and sometimes several times per minute. *See* C-80 Report at 18 (showing thirty-three entries in a forty-one-minute period of time). The original records were included in discovery, and the defense had viewed and was aware of the contents of the original documents. The defense had the full opportunity to cross-examine and recross-examine the detective. N.T., 9/25/24, at 115-146, 184-200. Despite arguing that the detective was not qualified to testify to the "may be subject to change" language in the original documents, Appellant's Br. at 15, the defense could have but failed to call a T-Mobile representative to testify. Finally, as the trial court stated,

> Appellant complains that the evidence should not have been admitted because the T-Mobile records contained the qualification: "Due to the complexities of telecommunications networks, the information contained in timing advanced records may be subject to change." There was no evidence that the information was ever changed.

Tr. Ct. Op. at 4.

We agree. The summary of the phone records was properly admitted because the requirements of Rules 1002 and 1006 were met. Additionally, the trial court concluded that the "timing advance records" were not unreliable and that they were highly probative of Appellant's involvement with the victim based on their locations. *Id*. We discern no abuse of discretion.

Appellant's second issue is that the trial court erred in denying his motion in limine seeking to preclude evidence of his Google searches. When reviewing the denial of a motion *in limine*, we apply an evidentiary abuse of

discretion standard of review. ***Commonwealth v. Zugay***, 745 A.2d 639 (Pa. Super. 2000). Evidence is generally admissible if it is relevant and competent. ***Commonwealth v. Hudson***, 414 A.2d 1381 (Pa. 1980). Evidence is relevant if it tends to establish a material fact in a criminal prosecution or tends to make a fact at issue more or less possible. ***Commonwealth v. Brown***, 414 A.2d 70 (Pa. 1980). Relevant evidence is admissible if its probative value outweighs its prejudicial impact. ***Commonwealth v. Shain***, 471 A.2d 1246, 1249 (Pa. 1984).

Appellant first argues that the trial court erred in allowing the Commonwealth to admit evidence of his Google searches for "male-on-male pornography." Appellant argues that this evidence was highly prejudicial and minimally relevant. Appellant's Br. at 17. Appellant claims that the male-on-male pornography searches were not relevant to any offense charged and was introduced solely to inflame the passions of the jury. ***Id.*** at 18. Appellant was not charged with any sexual offense and did not meet the victim through a shared interest in pornography. ***Id.*** at 19.

Appellant cites ***Commonwealth v. Lang***, 275 A.3d 1072 (Pa. Super. 2022) as analogous. In that case, the appellant was a priest charged with various offenses for sexually abusing a minor altar server. The day after the Attorney General released a grand jury report announcing the results of an investigation into clergy abuse in Pennsylvania, the appellant conducted internet searches for criminal attorneys in his area. On appeal, the appellant

contested the admission of that search at trial. This Court found that because the appellant had not been identified in the grand jury report and was unaware if he was under investigation, his internet search was irrelevant to prove consciousness of guilt. *Id.* at 1085.

We find *Lang* distinguishable from the instant case and find the Commonwealth's argument persuasive. The Commonwealth explained during the motion hearing that the purpose for the inclusion of the pornographic searches supported its theory that Appellant was a gay man interested in sex and lured the openly-gay victim to his house to have sex. Appellee's Br. at 13. The Commonwealth posited that the two men spoke on an application designed for gay men to meet and communicate anonymously. N.T., 9/18/24, at 14. Further, the Commonwealth points out that significant burns to the victim's body were around his pelvis, genitalia, and mouth. Those are areas that would be repositories for DNA following oral or anal sex. Thus, unlike in *Lang* where there was no nexus between the evidence and the appellant's consciousness of guilt—the purpose for which the evidence was admitted— here, Appellant's interest in male-on-male sex "provided a bridge over the gap" as to why the defendant would commit this crime on this victim and target certain areas of the victim's body more severely. Appellee's Br. at 14. Thus, there was a nexus between the evidence and the purpose for which it was admitted.

Appellant next challenges the admission of several of his Google searches. Appellant challenges the admissibility of his searches for "having sex with dead bodies" and "traits of a psychopath" because these searches were conducted weeks after the murder took place and thus could not have been relevant to his intent or state of mind at the time of the offense. Appellant's Br. at 21. Appellant was not charged with having sex with a dead body and the Commonwealth did not allege that he had done so. *Id*. Appellant argues that the nature of these searches is inherently inflammatory and far more prejudicial than probative because it portrayed him as having deviant sexual interests and psychological problems. *Id.* at 22-23. The Commonwealth argues that these internet searches are relevant to Appellant's state of mind after the offense and tend to prove consciousness of guilt. The trial court found after a hearing that Appellant's searches for "tranny porn," "having sex with dead bodies," "traits of a psychopath," "murdering in cold blood," and "twenty warning signs you may be dealing with a psychopath" to be relevant and not unduly prejudicial. N.T. 9/18/24, at 19.

A decision regarding the admissibility of evidence such as this is a matter within the discretion of the trial judge, and only an abuse of that discretion will constitute reversible error. *Commonwealth v. Frederick*, 475 A.2d 754 (Pa. Super. 1984). Evidence of consciousness of guilt is relevant and admissible. *Commonwealth v. Lark*, 543 A.2d 491, 497 (Pa. 1988). There is no requirement in the law that consciousness of guilt evidence needs to

occur within a certain period of time surrounding an offense. ***See, e.g.***
***Commonwealth v. Gonzalez,*** 858 A.2d 1219, 1223 (Pa. Super. 2004)
(stating that actions of the accused occurring "before, during, *and* after" an
offense are admissible as evidence of consciousness of guilt (emphasis in
original)); ***Commonwealth v. Hargrave***, 745 A.2d 20, 21 (Pa. Super. 2000)
(vacated on other grounds) (finding evidence of "flight" for one year following
an offense to show consciousness of guilt for a crime that was not prosecuted
until nine years later).

Additionally, we note that to be considered unfairly prejudicial, evidence
must be so inflammatory that it would drive the jurors to make their decisions
based solely on their personal reactions to that specific piece of evidence, and
nothing else relevant to the case. ***Commonwealth v. Flamer***, 53 A.3d 82,
88 (Pa. Super. 2012). Evidence is not unfairly prejudicial simply because it is
unfavorable to the defendant's case, and courts are not required to exclude
all facts that are "unpleasant" in the eyes of the defendant, especially if they
are relevant to an issue in the case. ***Id.*** at 88.

Guided by the foregoing principles, this Court acknowledges that many
of these terms *are* inflammatory, but we find no abuse of discretion in the trial
court's ruling that the evidence was not unfairly prejudicial. This Court agrees
that the searches are relevant to Appellant's state of mind before, during, and
after the murder. The pornography searches were ongoing, occurring from
January on. N.T., 9/18/24, at 17. The search for "murdering in cold blood"

- 11 -

also occurred in the month prior to the murder, while the others occurred in the month after the murder. *Id.* at 10. Searches for news including the victim's name occurred throughout this time as well, indicating Appellant's ongoing thought process and consciousness of guilt. *Id.* at 10. The trial court's lack of unreasonableness, partiality, prejudice, bias, and ill-will is further demonstrated by the fact that at the conclusion of the hearing, the trial court agreed on the record that there should be voir dire questions reflecting potential jurors' views on gay sex to exclude anyone who may be intolerant of that concept. *Id.* at 24. Accordingly, we find that the Google searches were properly admitted.

Appellant's third issue challenges the discretionary aspects of his sentence. As we have observed, "[a]n appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right." *Commonwealth v. McLaine*, 150 A.3d 70, 76 (Pa. Super. 2016) (citation omitted). Instead, to invoke our jurisdiction involving a challenge to the discretionary aspects of a sentence, an appellant must satisfy the following four-part test:

> (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Id*.

Here, Appellant filed a timely appeal. He presented a Pa.R.A.P. 2119(f) statement in his brief. **See** Appellant's Br. at 24. Appellant preserved the issue in his post-sentence motion. Accordingly, we must determine if he raised a substantial question.

"A substantial question exists where an appellant sets forth a plausible argument that the sentence violates a particular provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing process." **Commonwealth v. Brown**, 249 A.3d 1206, 1211 (Pa. Super. 2021). "The determination of whether a particular issue raises a substantial question is to be evaluated on a case-by-case basis." **Commonwealth v. Crawford**, 257 A.3d 75, 78 (Pa. Super. 2021) (citation omitted).

Appellant argues that he raised a substantial question because he claims his sentence is manifestly excessive. He also argues that his sentences for the three misdemeanor convictions fall outside the guideline range and constitute an unreasonable sentence. Appellant's Br. at 24. Appellant received a mandatory life sentence for his first-degree murder conviction, over which he acknowledges the court had no discretion. **Id.** at 26. For his three misdemeanor offenses, he received consecutive sentences with an aggregate of four and one-half to nine years' incarceration. Appellant claims that the life sentence as is would have sufficiently addressed his convictions. **Id.** at 27. The trial court opined that imposing only a life sentence while declining to

impose separate sentences for the three additional crimes would have minimized Appellant's conduct. Tr. Ct. Op. at 7.

We have previously stated that a challenge to the imposition of consecutive rather than concurrent sentences does not present a substantial question. *See Commonwealth v. Lloyd*, 878 A.2d 867, 873 (Pa. Super. 2005). However, our Court has recognized that a consecutive sentence can be so excessive that it may create a substantial question. We have also found that a claim that the sentence imposed was outside the guidelines and unreasonable raised a substantial question. *Commonwealth v. Guth*, 735 A.2d 709, 711 (Pa. Super. 1999).

Accordingly, we will address the merits of Appellant's sentencing claims, mindful of our standard of review. This Court has repeatedly stated: "[s]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Mouzon*, 828 A.2d 1126, 1128 (Pa. Super. 2003). An abuse of discretion is more than a simple error of judgment. *Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007). An appellate court will not lightly disturb the trial court's sentencing judgment as the judge is in the best position to "review the defendant's character, defiance or indifference, and the overall nature of the crime." *Commonwealth v. Conte*, 198 A.3d 1169, 1177 (Pa. Super. 2018) (internal citation and quotations omitted). Finally, our Supreme Court has repeatedly held that that the Sentencing

Guidelines are purely advisory in nature. *Commonwealth v. Yuhasz*, 923 A.2d 1111, 1118 (Pa. 2007). "The guidelines are merely one factor among many that the court must consider in imposing a sentence." *Id*.

Here, the trial court imposed the mandatory life sentence for first-degree murder and consecutive sentences of two and one-half to five years' for possession of instrument of crime (PIC), one to two years' for abuse of a corpse, and one to two years' for tampering with evidence. The trial court's reasoning was as follows:

> Here, the court had no discretion in sentencing Appellant to life in prison on the conviction for Murder of the First Degree; a mandatory sentence from which a court may not depart. To the extent that Appellant's complaint concerns the aggregate consecutive sentences of 4 ½ - 9 years incarceration on the PIC, Abuse of Corpse and Tampering with Evidence Convictions, the sentence was also proper. Appellant's conduct in murdering Naasire Johnson by shooting him in the neck, then burning and discarding his corpse in an attempt to conceal evidence of his identity was vile and cruel. Failing to impose separate sentences for the crimes relating to that conduct would have minimized those crimes and the outrageousness of Appellant's conduct. Accordingly, the court chose to impose consecutive sentences, which was well within its discretion. As already noted "[there is no abuse of discretion unless the sentence is manifestly excessive so as to inflict too severe a punishment." *Commonwealth v. Mouzon, supra*. Here, the sentence[s] were not manifestly excessive in light of the nature of the crimes and facts of Appellant's conduct as established by the evidence.

Tr. Ct. Op. at 7.

We find no abuse of discretion. Appellant's crimes are especially heinous. The court's sentences did not exceed the statutory maximum. Additionally, the court considered Appellant's background and personal

circumstances, Appellant's prior record score, the offense gravity score, and victim impact statements. N.T., 9/27/24, 53-61. Appellant is already facing a mandatory life sentence, and we find that an additional four and a half to nine years does not constitute too severe a punishment. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/17/2026